Chief Justice Marshall
delivered tlie opinion of tlie Court
Judge Simpson did not sit in this case.
By the 24th section of an act approved the 25th of February, 1848: (Session Acts, 1847-8, page 284,) the County Courts of Bourbon and Clarke counties were respectively authorized to take and subscribe stock for their respective counties in the Paris, Winchester and Kentucky river Turnpike Road Company incorporated by that act, and were empowered respectively to assess the amounts of stock so subscribed upon all the property and estate subject to the payment of State revenue within their respective limits.
At the July term 1849 of the Clark County Court, the following order was made and entered of record.
“With the concurrence of a majority of all the magistrates of the county, ordered that the County Court on behalf of Clarke county, subscribe as they hereby do, for fifty shares of stock in the Paris, Winchester, and Kentucky river Turnpike Road Company, to aid in constructing said road from the Bourbon line to Winchester, and furthermore to aid in constructing the said road from Winchester to the Kentucky river, this Court subscribes for and pledges the county for fifty other shares of stock. And to continue a turnpike road to Mount Sterling to be expended between Winchester and the Montgomery county line, they also pledge the county for $5000, and to construct a turnpike from Winchester to Red river, also pledge the county for $5000. It is understood that the above *144 amounts respectively shall not be called for, until there is a sufficiency of stock taken by individual stockholders to complete, with the aid of the above respective amounts, the said roads, unto the points above respectively designated, but as each point may obtain a sufficiency of stock, then as to that part the call may be made.”
Second order of Clurke Couniy Court.
Third order of Clarke County Court.
Rule for mandamus.
At the October term 1849, the same Court made an order of record but without stating by what majority or number of justices, “that the subscription of $5000 of this Court heretofore made to the Paris and Winchester Turnpike Road Company to be appropriated, • &c.,” “be suspended and. withheld until the directory of said road shall locate” the same on a certain route specified in the order.
And at the July term of the same Court in the year 1850, prior to which time the directory had located the road on a route different from that named in the order of 1849, and the work was in progress, the Court ordered it to be entered upon their record (which was done,) that the President, Directors, and Company, of the P. W. and Ky. river T. P. Company, this day presented their original book 'of subscription of stock with the names of individual stockholders, and the shares as originally taken, with a request that this Court should comply with the order made by it at the July term 1849 relative to the subscription of 50 shares of stock —and satisfactory evidence was offered of the ability of the company to complete the road from the Bourbon line to Winchester by the proceeds of the individual stock with the aforesaid 50 shares, but the Court refused to comply, and refused to sign .the obligation in said original stock book.”
In August following the order, the road company notified the Justices of the Clarke County Court, that they would move the Clarke Circuit Court on a certain day of its next term, to issue a requisite process or rule against them in oi’der to enforce a compliance with their order of July term 2849, &c. And on the mo- *145 lion accordingly made in Court a rule was made on the Justices to show cause why a mandamus should not issue, &c.
Response to the rule, and ground taken by County Court, and mandamus awarded.
An order of the County Court, by which it is said that itsubscribe^ for so many shares of road stock, when con eurred in by a competent major ity of the Court, held binding where no other mode was pointed out, and the Court had authority to make the subscription.
To this rule the Justices filed their responses, the majority who had passed the order of July 1850, assuming theground; First, that the order of July 1849, was notan obligatory subscription of stock by the Court, and some of them intimating that it was not fairly obtained; and secondly, that the act authorizing a subscription by the County Court to be raised by taxes on the county, was unconstitutional and void. A replication to these responses denying fraud or unfairness was filed by the applicants, and upon full hearing by the Court a peremptory mandamus was awarded against the Justices of the Clarke County Court requiring them to levy a tax according to the provisions of the act of Assembly incorporating the said T. P. company and raise thereby the sum of $5000 and apply the same to the payment to said Company of their subscription to its capital stock.
To reverse this order the Justices prosecute a writ of error; assigning for error in substance, that it was erroneous to award a peremptory mandamus or any mandamus, and that the motion should have been overruled on the grounds assumed in the .response of the majority. It is contended first that the order of July 1849, is not a subscription because the form prescribed in the first section of the act above referred to, has not been pursued. That section directs the insertion of an obligation in a book to be provided for the purpose, and plainly indicates that the subscription is to be made by the individual signing his name to this obligation, and ■* stating the number of shares which he takes. But this form of subscription applies evidently to the case of individual subscribers, as do also the directions in a subsequent section authorizing suit against delinquent subscribers, by warrant or in the Circuit Court; contemplating manifestly the case of individual subscribers. The County Courts are authorized by a subsequent *146 section to take and subscribe for stock, but no mode is prescribed by -which their subscription is to be evidenced. It is manifest upon the face of the order of July 1849, that it was made as a subscription. The suspending order of October calls it a subscription and the evidence shows that it was so intended and understood when made, both by the Court which made it and by the company which solicited and accepted it. And as a subscription by the Court it was the inducement to individual subscriptions. The question however is, what was and is its legal character and effect ? And we are of opinion that if the Court had authority to make it, it was binding as an obligation to pay to, the compan)'- according to the terms of the charter, the calls which might lawfully be made upon the fifty shares, when subscriptions by individuals should be obtained sufficient to make that portion of the road for which this subscription was intended. The County Court acts and can only act through its orders made of record and which are presumably signed by the presiding justice. Such an order declaring that the Court thereby subscribes the shares which it was authorized to subscribe, evidences the highest obligation which the Court can impose upon itself. It is the essence and substance of a subscription of so many shares, and whatever remains if any thing besides the payment or provision for payment, is at most but mere form. If the Court had gone, on to. authorize a particular person to subscribe the obligation in the books of the company, such subscription if properly made would have bound no one individually, but should only have referred to the order and stated the fact therein stated, that the County Court of Clarke subscribes 50 shares. But the oi’der itself would still have been the only basis of the obligation, and the only foundation of any remedy for its enforcement. And it is by no means clear that such memorandum in the book would have had any greater effect than if a certified copy of the order had been attached in the appropriate place for subscriptions, or than a *147 in ere statement by the officer of the company under its authority, that the County Court had subscribed. The principal effect of any such entry would have been to show that the company had accepted the subscription. But there may be other means of establishing that fact, and it is sufficiently established in this case.
Where a County Court having the power to make a subscription for road stock does do so, it is not in the power of a subsequent County Court to set aside and vacate such subscription.
So far as any subscription by the Court could bind it, the order of July 1849 having been in fact accepted by the company as a conditional subscription, was as obligatory as the most formal entry on the books of the company could have made it, and any attempt to coerce the obligation necessarily implies a concession to the County Court of all the privileges of'individual subscribers or stockholders. ■ And if some entry or memorandum on the books, in the form of a subscription or otherwise should be deemed requisite as evidencing or securing these privileges, the offer of the books of the company for the purpose when the condition of the subscription had been complied with, and the Court was called on to comply on its part, gave full opportunity for such act entry or memorandum as the Court might have been authorized to make or to require.
We cannot therefore regard this order as a mere offer or pledge to subscribe the 50 shares in this particular road, but as actually taking and in substance and legal effect subscribing for that number of shares, subject only to the condition expressed in the order. The difference in the language used in reference to this and other roads, shows that as to this, the subscription though conditional was intended and understood to be actually made.
Then could the Court at a subsequent term three months afterwards retract this subscription, or subject it to new conditions ? It is admitted that the act of the Court in making or declaring this subscription was not in its nature judicial, but it does not follow that it was reversable at the pleasure of the Court at a future session. Whether it be called a ministerial or an execu *148 tive or a legislative act, it was the execution of a power in which others besides the County Court and its constituents were interested, and by the execution of and acceptance of which an obligation was created and a right vested, aud in effect a contract made which could not be annulled at the will or by the act of the Court without the consent of the other party. The County Court had an absolute discretion in the first instance to make or to abstain from making the subscription. And it may be that if it had been a mere voluntary act on their part, they might before it was accepted by the company or acted on by others have withdrawn what might then have been denominated an offer to subscribe. But the subscription was solicited by the company, and the order in fact drawn by one of the directors, and regarded by all as an actual subscription. It induced individuals to become members of the company by subscribing to the road, and the modification made at the October term 1849, was opposed by the company. If under any circumstances there might have been a right of retraction it is not shown to have existed in the present case either in October or at any time after the original order was made. 1 he suspending order of October is therefore of no validity. Nor do we think that the lapse of twelve months before the condition of obtaining sufficient individual subscriptions was performed or made known to the Court, was such an unreasonable delay as absolved the Court from its obligation or authorized a renunciation of it; and especially as the delay may have been in part produced by the act of the Court in attempting to annex a new condition to its subscription. But independently of this, we perceive no ground for saying that the delay was unreasonable.
But it is contended that the order of July 1849 should not be deemed obligatory, because it was adopted under the influence of a mistake on the part of the Court^ with regard to the location of the road, and was unfairly procured by the company or its agents. The fact *149 ......, to be that the order as originally drafted and proposed by the directors or some of them, made the subscription depend on a particular location, the same which was prescribed by the order of October 1849. But several members of the Court objected in substance that the location of the road belonged properly to the directors, and should be left to their discretion, without being prescribed as a condition of the Courts subscription, the condition was on these grounds stricken out, and the order passed without it, .and as it now seems could not have passed with the condition. On the other hand it appears that the order as made could not have passed without the votes of two justices, who say they would not have voted for it but for the impression that the road would be located on the route described in the condition which was stricken out, and that they received this impression from two of the directors who had stated to them that they were in favor of that route. But it does not appear that their statements were made after the condition was stricken out, nor that they were made at any time for the purpose of influencing the votes of these justices, nor that they were made by the authority or in the name or with the knowledge of other directors, nor that they professed to convey any assurance or promise that the road would be located on the particular route, nor that they were intended or calculated to produce any delusion on the subject. The two directors were in fact in favor of the location referred to and voted for it. But a majority of the directors feeling themselves free to chose, and entertaining a different opinion as to the advantages of the several routes in question, voted for and established a different location.
We perceive in these facts no grounds for imputing fraud either to the body of directors, or to the two who are particularly referred to. The original form of the-order certainly implied that the directors were then willing to take the subscription on the. condition expressed in it. But when the condition was stricken out' *150 for the avowed purpose of freeing them from such a restriction, and the order was passed without reference to any particular location, there was no longer any implied obligation on their part as aboard to adhere to the route indicated. The majority therefore, violated no faith in choosing a different route, and the two directors who had communicated their opinions, carried them out in their votes. We mention this not under the impression that these directors clothed with an important trust, might not have honestly and properly changed their opinions, and voted accordingly, but because it leaves no room for imputing unfairness or improper motive to them in stating their preference.
The power oí the Legislature to authorize the County Court to open roads,build bridges, and to make turnpike roads is undoubt* ed.
The conclusion that there was no fraud or intention to deceive, on the part of the directors or any of them, with the design of thereby obtaining this subscription, frees the case from any question as to the effect which such conduct should have upon the validity of an order like this, if shown to have been caused or produced by wilful deception on the part of those interested and active in obtaining it. In the absence of all intention to deceive, and thus, to procure the order, we are satisfied that it would be going beyond the proper sphere of judicial enquiry to investigate the motives or impressions under which the individual members of the Court may have voted in the particular case. And we are certain that the order cannot be invalidated by the fact however well established, that some of the Justices voted for it under impressions produced not by misrepresentation or imposition, but by their own erroneous deductions from facts.
It only remains to consider very briefly, whether the act authorizing the subscription and consequent taxation by the County Court is constitutional. The general question whether the Legislature may delegate the power of local taxation for local purposes to subordinate local authorities, is no longer an open one. And if we were to point out the example of its most unquestioned and continued exei’cise, it would be found in the *151 power of taxation which during the entire existence of the late constitution, and perhaps of the State itself, has been vested in and exercised by the County Courts. These Courts have always and by legislative authority, had power to tax for local purposes the ■ tytheables white and black within their respective counties. And among these local purposes the erection of bridges and the repair of roads have been always recognized as prominent objects. It is by the legislature and not by the constitution that the limit of this tax to $1 50 cents for each tythe or tytheable, has been imposed. And as the Legislature might increase the sum which the County Courts might levy as a tax on tytheables, it seems impossible to say that they may not extend their power of taxation to other subjects, as land and goods and whatever else may be properly required to contribute to the public convenience or necessities. Nor do we perceive any rational ground for saying that while the Legislature may authorize the County Courts to levy a tax for the purpose of building a bridge or cutting down a hill, or making a causeway across a swamp, or of making other improvements in the roads of the county for short distances and not coming up to the character of turnpikes, they have no power to authorize a tax for constructing or in aiding in the construction of a turnpike road within the county. We know of no principle in the late or the present constitution which would authorize such a discrimination, whether founded upon a difference in the character of the roads, or in the amount of tax requisite for constructing or repairing them. And as the Legislature might undoubtedly authorize a County Court to levy $5000 for the purpose of building a bridge, or to levy in the course of two or more years so much as might be requisite to build a particular bridge, we can find no ground for denying the power of authoi'izing a similar levy for the purpose of constructing or aiding in the construction of a certain length of tunipike road in their county. Certainly the privilege of charging and receiving tolls for the benefit of the county, cannot affect the question of powex\
*152 There may, no doubt., be great abuse in the exercise of this delegated power, or in delegating it. But all power is subject to abuse. In point of justice and propriety, it is right that objects of local convenience or necessity, should be paid for by the local community which is to receive the benefit, rather than that the cost should be made a charge upon the whole State. And as the burthen is properly local, it is convenient and suitable to the character of our institutions, and the general notions of the community, that some proper local authority should be invested with the power of determining upon the necessity and extent of the expenditure to be made, and of assessing the burthen upon the local community, subject to such limitations and restrictions as the supreme legislature may, in its discretion, th:nk proper to impose. It is to these restrictions, imposed by the general representative body, under the influence of general considerations affecting the rights and interests of the whole community, and to the character and composition of the local tribunal or authority to which the power is delegated — to the liability of its members — to share in the burthens which they impose — to their knowledge of the local requirements and ability — and to the identity of feeling and interest which may be presumed to exist between them and the local community for which they are to act, and to the responsibility which, though not elected, they feel themselves under to public opinion, that we are to look for safety from any great abuse of this power. And while we think it might be said, a priori, that this power of providing for the local wants and convenience, may be more advantageously and safely exercised by local organizations, than if all were to be done by the central government, the universal adoption of these local organizations in some form or other and with powers more or less extensive, proves their superior convenience if not their absolute necessity. We have however said more upon this branch of the case than was intended, and more than is necessary, since *153 the same question in relation to the taxing power as delegated to towns and cities has been repeatedly discussed and decided by this Court. We only add, with reference to .the objection founded on the principle that there should not be taxation without representa-, tion, and on the assumption that this principle was violated by delegating the taxing power to the County Courts composed of members not elected by the tax payers; that the objection seems rather to apply to the former constitution than to the legislation under it; that the principle referred to, though in a general sense it may be considered as the basis of our institutions, is not in the literal sense contended for, a principle of our constitution; that the County Court though not heretofore elected by the people of the county, being .altogether taken from among them, may upon local questions be regarded as more truly their representative than the whole body of the Legislature, of which ninety-nine hundredths may be taken from other counties, and that unless virtual representation be recognized as authorizing taxation, that is, if none may rightfully be taxed but such as have a right to vote for the w]mle or a part of the taxing body, a large number of taxpayers and a large portion of the property within the State must be excluded from the power both of general and local taxation, even under the new constitution which makes all offices elective. And besides all this, there is the fact already stated, that from the beginning of the government to this day, the power of local taxation has been vested in and exercised by the County Courts. And the whole question now presented, is whether the Legislature might not extend the limits previously imposed on the same power. This question in our opinion admits of no other than an affirmative answer. It might indeed be deemed more satisfactory in case of any extraordinary increase to consult the voters of the county as advisory to the County Court. But even if this wore done, the question of power would still remain as before, while there were any persons subjected to the tax against their own consent.
A mandamus is the appropriate remedy for a turnpike road company to compel a County Court to comply with its obligation to levy money to pay their subscription to build a road alter subscription.
Then the order of the County Court of July 1849, having been obligatory as a subscription of fifty shares of stock upon the condition expressed, it became the duty of the Court upon being satisfied that the condition had been fulfilled and the subscription become absolute, to take the proper measures as placed in their power, and directed by the 24th section of the act incorporating the road,company, for raising the money to become due for the shares taken by them. And upon their refusal as evidenced by their order of July 1850, the appropriate and indeed only remedy for compelling a performance of this duty, was by a resort to the Circuit Court for a mandamus; Hardin vs Page, (8 B. Mon. 651-2. And although it seems that in Eng land it is usual even after a hearing on a rule to show cause, to issue in the first place a mandamus in the alternative, requiring the act to be done or a good reason to be shown for not doing it, upon the return of which without doing the act or showing a sufficient reason for not doing it, a peremptory mandamus issues ; we do not find that such has been the course of procedure in this State. And as it is certainly in the power of the Justices to levy the tax, and their objections to exercising the power were made known in their response, and have been overruled, there seems to be neither necessity nor propriety in withholding a peremptory mandamus. If it could be supposed that any cause might intervene which would render it improper dr impossible for the Court to do the act required, such fact might doubtless be made, known with effect, though the mandamus should not be conditional. For though peremptory it cannot execute itself, and if disobeyed can only be enforced by the further order and action of the Court which issued it.
The order for a mandamus referring to the act of assembly incorporating the company, and giving the power of taxation to the County Court, is not understood as requiring any departure from the act, either with respect to the amount or mode of the tax, or of the *155 payments to be made. But the $5000 are to be levied so as to meet the calls which the company may rightfully make on the stock. Any other payments must be by agreement only.
Hanson and Huston for plaintiffs; Eginton for' defendants.
Wherefore the order for a mandamus is affirmed.