CASES 54, 55—PETITIONS FOR MANDAMUS—OCTOBER 20.

# Mercer County Court v. Kentucky River Navigation Company.

# Garrard County Court v. Kentucky River Navigation Company.

APPEALS FROM MERCER AND GARRARD CIRCUIT COURTS.

1. SUBSCRIPTIONS OF STOCK IN CORPORATIONS BY COUNTY COURTS must be made in substantial conformity to the mode prescribed in the law authorizing the subscription.

2. INVALID SUBSCRIPTIONS OF STOCK IN KENTUCKY RIVER NAVIGATION COMPANY.

The Mercer County Court, a majority of the justices being present, made an order "that the sum of seventy-five thousand dollars *be directed to be subscribed*," and appointed a commissioner to subscribe the same in the Kentucky River Navigation Company.

The Garrard County Court in like manner made an order "that the sum of one hundred thousand dollars *shall be subscribed* on the part of Garrard County," and appointed an agent to subscribe the same in said company.

In pursuance of said orders the subscription was made on the books of the company for and on behalf of each of said counties by its agent. *Held that*

The above orders and subscriptions were not binding. They were proposals to subscribe stock, and did not amount to contracts of subscription. The county court had no authority to appoint a commissioner or agent to make the subscription.

3. County courts, under the law, act and can act only through their orders made of record.

4. The subscriptions were not binding in these cases unless the orders of the county court made of record, when a majority of the justices were present, amount of and within themselves, disconnected from any act done out of court by any one, or in court not of record, to a perfect and complete subscription of stock.

5. Upon its face the order shows in each of these cases that the contract of subscription was incomplete, and that it was intended to remain

Mercer County Court v. Kentucky River Navigation Company.

so until made perfect by the action out of court of an agent, whose appointment was unauthorized, and whose actions in the premises were necessarily void.

GEORGE R. McKEE,
A. HARDING, . . .
THOS. C. BELL, . .
DURHAM & JACOBS, } . . . . . . . . For Appellants,
JAMES D. HARDIN,
W. E. KELLER, . .

CITED

Constitution of Kentucky, section 36, article 2; section 3, article 13; section 33, article 4; section 14, article 13; section 37, article 2. Bill of Rights, section 14.

Act of March 1, 1865, incorporating the Kentucky River Navigation Company; act of February 16, 1869, 1 Session Acts, page 33.

Littell's Statutes, 366.                     Hardin's Reports, 258.

Revised Statutes, article 19, chapter 27.

Civil Code, sections 366, 364.

Revised Statutes, sec. 5, art. 12, chap. 27, 1 Stanton, 322, 328.

Revised Statutes, section 1, article 12, chapter 26.

Myers's Supplement, 693, 694.

Morehead & Brown's Statutes, Act of 1796, pages 505, 506.

Williard's Equity, 428, 429.

Angell & Ames on Corporations, 323.

Constitutional Debates of Kentucky, page 1030.

American Law Register, August, 1870, page 487.

Cooley on Constitutional Limitations, 589–592, 487–494.

2 Metcalfe, 378, Twedy v. Commonwealth.

2 Metcalfe, 322, Fry's ex'r v. Lexington & Big Sandy Railroad Co.

3 Met. 142, Winchester & Mt. Sterling T. P. Co. v. Clark Co. Court.

3 New Hampshire, 321, Scott v. Wilson.

1 Story's Equity, sections 192, 193.

3 Blackford, 193, Coxe v. State.

2 Metcalfe, 72, Maddox, &c. v. Graham & Knox.

2 Kent, 561.        5 Bush, 443.        1 Blackstone, 92, 127, 128.

9 Dana, —, Lexington v. McQuillan's heirs.

9 B. Monroe, 330, Cheany v. Hooser.

9 B. Monroe, 534, Talbot v. Dent.

1 Yerger, 452, Marr v. Euloe.

1 Pick. 180, Commonwealth v. Charleston.

5 Pick. 492, Kean v. Stetsen.

1 Halst. 1, Arnold v. Munday.

20 Ohio, 199, Washington Mut. Ins. Co. v. Reed & Brown.
15 B. Monroe, 491, City of Covington v. Southgate.
11 B. Monroe, 149, Justices of Clark Co. v. The Paris, Winchester
    and Kentucky River Turnpike Company.
 8 Watts, 434, Bird v. Smith.
 6 Ship. 433, French v. Camp.
 1 Lansing, —, People v. Allen.
 2 Metcalfe, 553, Mathus v. Shields.
 2 Metcalfe, 350, Debo v. Hooper.
 8 Iowa, 92, Warford v. Unger.
17 B. Monroe, 48, Lackey v. Richmond & Lancaster Turnpike Co.
18 Barbour, 284, Morgan v. King.
35 New York, 454, Morgan v. King.
17 B. Monroe, 223, Sharp's executor v. Donovan.
16 Michigan, 269, Ryerson v. Utley.
10 Wisconsin, 258, Weeks v. City of Milwaukie.
13 B. Monroe, 22, Slack v. Maysville & Lexington Railroad Co.

GEORGE W. DUNLAP,
R. M. & W. O. BRADLEY,
J. S. BRONAUGH,
J. B. & P. B. THOMPSON, JR.,
P. B. THOMPSON, SR.,    . . . . For Appellee,
GAITHER & KYLE,
T. N. & D. W. LINDSEY,
JOHN. L. SCOTT,

CITED

Act of March 1, 1865, incorporating appellee, 2 Session Acts, 96.
Civil Code, sections 526, 365, 367.
Constitution of Kentucky, secs. 34, 35, 36, 37, art. 2.
Constitution United States, sec. 10, art. 1; sec. 20, art. 13.
18 B. Monroe, 852, Anderson County Court v. Stone.
 2 Metcalfe, 56, Maddox v. Graham.
 5 Bush, 225, Shelby County Court v. Shelby Railroad Co.
 9 Cranch, 88, Fletcher v. Peck.
 4 Wheaton, 518, Dartmouth College v. Woodward.
 1 Sumner, 276, Allan v. McKean.
 9 Gill & Johnson, 365, University of Maryland v. Williams.
21 Pennsylvania, 164, Sharpless v. Philadelphia.
 1 Bush, 505, Vance v. Vanarsdall.
 5 Bush, 246, Ferguson, &c. v. Landram, &c.
50 Pennsylvania State Reports, 161, Spea v. Blainstille.

Mercer County Court v. Kentucky River Navigation Company.

4 Metcalfe, 275, Green v. Goodwin.

| | |
|---|---|
| Act of March 13, 1868. | 2 Duvall, 243. |
| 9 Cranch, 43. | 1 J. J. Marshall, 283. |
| 8 B. Monroe, 143. | 14 B. Monroe, 432. |
| 15 B. Monroe, 678. | 13 B. Monroe, 26. |
| 12 B. Monroe, 147. | 9 B. Monroe, 338. |
| 9 B. Monroe, 530 | 11 B. Monroe, 153. |
| 1 Lord Raymond, 384. | 4 B. Monroe, 203. |
| 6 B. Monroe, 601. | 3 Hill, 219. |
| 4 Kent, 282. | 1 Dana, 14. |
| 2 Metcalfe, 425. | 2 Metcalfe, 298. |
| 1 Bush, 104. | 6 Bush, 227. |
| 15 B. Monroe, 235. | 17 B. Monroe, 51. |
| 1 Hall, 121. | 9 B. Monroe, 235. |
| 16 B. Monroe, 361. | 2 Mississippi, 169. |
| 2 Metcalfe, 150. | 1 Bush, 145. |
| 8 B. Monroe, 651. | 3 Starkie on Evidence, 1042. |

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT, JUDGE HARDIN DISSENTING.

These two appeals were not heard together; but inasmuch as they involve substantially the same questions of fact, and must of necessity be settled by the application to each of the same principles of law, they will for convenience be considered together, and one opinion made to apply to both cases.

The ninth section of an act approved March 1, 1865, entitled "An act to incorporate the Kentucky River Navigation Company," provides "that the county courts of the several counties bordering on the Kentucky River, or interested in its navigation, may on the application of the corporation named in the first section, or of the directors of said company after its organization, a majority of all the justices of the peace being present, subscribe stock in said company, and levy a tax on all taxable property of said county sufficient to pay the whole amount of said subscription in three years from the time it was made, which tax shall be collected in all respects as taxes for state revenue are now collected."

Application was made to the Mercer County Court for a

subscription to the capital stock of this company, and in response to such application this order was made:

"At a county court held for Mercer County at the court-house at Harrodsburg, on Monday, the 2d day of September, 1867, present Chr. Chinn, presiding judge . . . . . . . (and thirteen justices), an application being made by the Kentucky River Navigation Company to the court to subscribe stock to said company, and the same having been duly considered, and all the members of the court present save one are of opinion that it is the interest of this county that stock should be subscribed by them in said company, and seven of the members present declared in favor of and voted for the following order, viz.: It is ordered that the sum of seventy-five thousand (dollars) be directed to be subscribed, upon the conditions hereinafter named, as stock by this court in behalf of the county of Mercer in said company, payable in three equal installments, and that a levy be made in due time therefor, so that the first installment shall be collected and paid to said company in the year 1868. And Dr. Joseph A. Thompson is hereby appointed a commisioner to subscribe seven hundred and fifty shares of one hundred dollars each in stock in the Kentucky River Navigation Company, as above stated. But said commissioner is directed not to subscribe said stock, or any part thereof, until said company shall, by proper orders entered on the books, agree that no part of their subscription shall be mortgaged under the provisions of the tenth section of the act of the Kentucky Legislature incorporating said company, nor shall the county of Mercer be in any manner bound for the subscription herein decreed to be made until said company has accepted it upon the conditions herein set forth."

Afterward, on the 18th of March, 1868, at a county court held by the presiding judge alone, a paper, purporting to be an order of the president and board of directors for the Navi-

gation Company accepting the proposed subscription upon the terms indicated, was produced in court and spread upon its records.

The commissioner, Thompson, having determined that the resolution of the president and directors of the company was a compliance with the conditions imposed by the order of the county court under which he claimed authority to act, entered upon the books of the company a subscription of seven hundred and fifty shares of stock for and on behalf of the county of Mercer. Under this state of affairs a motion made by the Navigation Company to the effect that the county court should levy the necessary tax to pay the first annual installment due on account of this supposed subscription was overruled, and upon application therefor the circuit court awarded a writ of mandamus compelling the justices to levy such tax. This judgment can not be sustained unless the action of the county court, together with that of the com-missioner, amounts in estimation of law to a complete and binding contract of subscription.

The act of the General Assembly incorporating the company imposed no obligation upon the County Court of Mercer to take any part of the proposed capital stock of the company. As to each one of the counties embraced by that charter, it was at most but an enabling act. Authority was conferred upon the various county courts, a majority of the justices of their respective counties being present, to do or not to do a certain act, and prescribing the consequences in case such contemplated act should be done. Such a statute has no "mandatory effect requiring immediate obedience, except so far as it regulates the time and manner of doing the [discretionary] act, and expressly or impliedly commands that the agent shall not be prevented from doing it according to the discretion allowed." (Slack v. Lexington and Maysville Railroad Company, 13 B. Monroe, 1.)

Vol. VIII.—21

In enacting such a law the legislature determines peremptorily the manner of doing the discretionary act, and from the mode pointed out the agent has no authority to depart. As the law and its consequences may be oppressive or otherwise unacceptable to that portion of the community to be immediately affected, the legislature defers to such agents as it may see proper in its wisdom to select, whether the statute shall or shall not become a perfect law. (*Ibid.* 24.) The selected agent possesses no other or greater authority than such as is expressly conferred, and in order to bind his constituent must act within the scope of his delegated powers, and in substantial conformity to the mode prescribed by the statute authorizing him to act at all.

The act incorporating the Navigation Company delegated to the county courts of certain counties the power to determine whether or not the counties represented by those bodies should or should not become stockholders in the capital stock of the company. The functions of these courts under this act were in some measure legislative, inasmuch as upon their action was made to depend whether or not this provision of the act of incorporation, otherwise conditional, should as to the constituents respectively represented by them become absolute. To these bodies was committed the delicate and responsible duty of determining a question of taxation. In the discretion and integrity of the justices composing these courts the General Assembly reposed a high degree of confidence and trust, and clearly indicated that the persons possessing this confidence were expected and required, in the discharge of the delicate duty imposed upon them, to act in person, and not by or through a subagent or commissioner. While acting together as a county court, they were authorized for and on behalf of their respective counties to subscribe to the capital stock of the Navigation Company. County courts, under the law, act and can act only through their orders made of record.

By such orders so made the courts and those for whom they are legally authorized to act are bound. By the act under consideration the authority conferred upon the justices composing the various county courts was purely personal. The General Assembly doubtless assumed that they, as the general financial agents of the tax-payers of the different counties, were proper persons to determine the important questions submitted to their action. A personal trust of such a character can not be delegated. (Lyon v. Jerome, 26 Wendell, 493 and 494.)

The law pointed out the mode by which these agents should have exercised their delegated powers, and the rule of procedure thus prescribed such agents could not disregard without rendering their action void. (Sedgwick's Statutory and Constitutional Law, 385; Agent State Prison v. Lathrop, 1 Michigan, 438; Hydes & Goose v. Joyes, 4 Bush, 464.)

The agent, Thompson, was appointed without authority of law, and his acts can not bind the tax-payers of Mercer County. Unless the orders of the county court made of record, when a majority of the justices were present, amount of and within themselves, disconnected from any act done out of court by any one, or in court and not of record, to a perfect and complete subscription of stock, the award of the mandamus was erroneous. The action of the commissioner in entering in the books of the company the contract of subscriptions can have no greater effect than if he had merely attached to such books copies of the orders of the court. Those orders constitute the only basis of obligation upon the part of the court or of the county, and the only foundation for any remedy for their enforcement. (Justices Clark County v. Paris, Winchester & Kentucky River Turnpike Company, 11 B. Monroe, 146.)

The order made at the only term at which a majority of the justices were present goes no further than to direct that in the

future, when certain specified conditions shall have been acceded to by the Navigation Company, a subscription of stock shall be made. It was not intended that the act of the court in making this order should be regarded or treated by any one as a subscription. Upon the contrary, the commissioner was prohibited from subscribing the seventy-five thousand dollars of stock, or any part thereof, until the company had, by proper orders entered upon their books, indicated their acceptance of the terms imposed. Upon its face the order shows that the contract of subscription was incomplete, and that it was intended to remain so until made perfect by the action out of court of an agent whose appointment was unauthorized, and whose actions in the premises were necessarily void.

The order when legally construed is nothing more than a proposal to subscribe the amount of stock named upon the conditions fixed. Its acceptance may have imposed a moral obligation upon the justices participating in making it to carry out in good faith their agreement to subscribe; but if they can be proceeded against for the violation of such agreement by writ of mandamus (a legal proposition which will scarcely be insisted upon), it must be to compel them to make the subscription, and not to levy a tax to pay a subscription which thus far, acting as a county court, they have not made. The company did not understand the order in question as anything more than a mere proposition upon the part of the county court, and in their resolution accepting the conditions annexed to the proposal it is termed " an order of the County Court of Mercer County, made at the September court, 1867, *proposing to subscribe to the capital stock of this company;* " and they rely for the relief sought not upon the order alone, but upon the subscription made in pursuance thereto by the commissioner, Thompson.

If the acts of Thompson had been reported to and approved by the county court when properly constituted, and the order

of the directory of the company recognized as a substantial compliance with the terms of the proposition to subscribe, a subscription of stock might possibly be implied; but the report of Thompson was made, if at all, and the order of the directory spread of record, at a term of the court when none of the justices were present. As the county judge sitting as a county court had no authority under the law to take any action in the premises, his orders are entitled to no consideration whatever.

The action of the Garrard County Court, although substantially the same with that of Mercer, is evidenced by an order more definite in its character, and which upon a casual inspection might be regarded as containing the essence and substance of a subscription of stock to the amount of one hundred thousand dollars, independent of any future action by the court itself, or by any other agency. The order recites the fact that an application for a subscription of stock had been made by the company and duly considered by the court (a majority of the justices being present), and it is ordered and adjudged that the "sum of one hundred thousand dollars *shall be subscribed* on the part of Garrard County to the capital stock of the Kentucky River Navigation Company; and William H. Wherritt is hereby appointed the agent of the court, and is directed *to subscribe* one thousand shares of stock of one hundred dollars each on the books of said company, payable in three annual installments, and report his acts to this court. This subscription is made upon the contingency that the said company obtain subscriptions of stock sufficient to extend slackwater navigation above or to the mouth of Paint Lick Creek, the boundary line of Garrard County, including the aforesaid subscription."

In the order the term "this subscription" is once used, and it concludes by speaking of the "aforesaid subscription," both of which expressions would seem to indicate that the order

itself was intended to operate as a subscription. But this conclusion is rebutted by the fact that the court adjudges that one hundred thousand dollars *"shall be subscribed."* The word *"shall"* clearly refers to the future, and conveys the idea that the subscription of stock is not then, but is thereafter, to be made.

Again, instead of stating in the order that the court thereby subscribed the amount of stock named, which would have evidenced a perfect and enforceable obligation imposed by the court upon itself, a commissioner was appointed, who was directed, out of court and at some future time, to make the subscription for and on behalf of the court; and when he should have performed this duty to report his action in the matter back to his principal.

Carefully considered, this order amounts to no more than an offer or pledge to subscribe stock, if it is even susceptible of that construction. It evidences the fact that the county court, after due consideration, had arrived at the conclusion that it was to the interest of Garrard County that the subscription should be made, and that it had determined to take such action, and therefore that a power of attorney was given to its commissioner authorizing him to carry such determination into effect. This conclusion is fortified by the fact that the order is so interpreted by the officers and attorneys of the Navigation Company.

In the petition for the mandamus it is alleged that the County Court of Garrard County, "by proper and legal orders then made, ordered and adjudged that the sum of one hundred thousand dollars *should* be subscribed on the part of Garrard County to the capital stock of the Kentucky River Navigation Company; and further ordered that William Wherritt be appointed agent of the court, and directed *to subscribe one thousand shares of stock* . . . on the books of said company;" and further, that "said Wherritt, agent as aforesaid,

Mercer County Court v. Kentucky River Navigation Company.

and in obedience to the order aforesaid, *did subscribe on the books* of said company," etc.

For reasons already given the acts of Wherritt must be regarded as of no binding effect; and as he made no report of his acts to the county court, and as his attempted subscription was neither approved nor ratified by that body, the rights of the parties litigant must be determined by the legal effect of the order under which he claimed authority to act. This order a majority of this court regards as wholly insufficient to establish, in and of itself, a contract of subscription absolute and complete. In the absence of such an obligation upon the part of the court, the circuit judge should not have awarded the mandamus compelling the levy of the proposed tax.

These conclusions render it unnecessary that we should consider and decide the constitutional questions presented by counsel in the argument of the two appeals. Wherefore the members of the court concurring herein forbear to express an opinion as to the constitutionality of the tax authorized to be imposed by the ninth section of the act incorporating the Navigation Company.

For the reasons indicated it is considered that the judgments in the two causes under consideration be reversed, and that they be remanded with instructions in each case to dismiss the petitions of the appellee.

Judge HARDIN does not concur in the substitution of this for the opinions of the court heretofore delivered by him, but for reasons in writing filed herewith adheres to those opinions.

JUDGE HARDIN DELIVERED THE FOLLOWING AS HIS DISSENTING OPINION, ADHERING TO THE OPINION FIRST DELIVERED BY HIM.

A careful consideration of the petition for a rehearing in each of these causes has rather confirmed than shaken my confidence in the conclusions expressed in the former opinions delivered by me, as the unanimous decisions of this court as

constituted at that time; and I have failed to perceive in the foregoing opinion any sufficient reasons for abandoning the grounds of those decisions. If the conclusions therein expressed, reached as they were after elaborate and thorough argument, and upon careful consideration, are not sustained by sufficient reasons, I do not believe the decision of the majority of the court now rendered rests on better or more maintainable grounds; on the contrary, while I entertain and take pleasure in expressing great respect for the views and conclusions of my associates from which I may dissent in these as in other cases, a sense of duty constrains me to say that I am neither satisfied that the technical reasons now assigned for reversing these judgments are correct, nor that the ends of justice do not require the judicial determination of the more substantial and important questions presented in the argument.

I therefore adhere to the former opinions of this court, as still expressive of my own views, without any alteration whatever.

JUDGE HARDIN'S FIRST OPINION, DELIVERED DECEMBER 15, 1870, TO WHICH HE STILL ADHERES AS HIS DISSENTING OPINION, READS AS FOLLOWS.

The Kentucky River Navigation Company was incorporated by the Legislature of Kentucky, March 1, 1865; its business, as declared in the act of incorporation, being "the improvement of the navigation of the Kentucky River and its tributaries by building additional locks and dams." The capital stock of the company was required to be one million five hundred thousand dollars; but it was authorized to organize and proceed to business as soon as a subscription of two hundred thousand dollars should have been obtained. Among other powers conferred by the charter, the corporation was authorized to establish tolls for the transportation of persons and property over the Kentucky River and its tribu-

taries within the influence of its improvements; provided the same should in no case exceed the rates established by the board of internal improvement, and in force on the Kentucky River at the time. The sixth section of the charter provides that "so soon as the said company shall have completed two locks and dams they may give notice thereof to the president of the board of internal improvement, who, on being satisfied that the same has been properly built and completed, shall deliver to the said company the possession of all locks and dams heretofore built by the commonwealth on the Kentucky River, with all the lock-houses, grounds, buildings, and property attached thereto, and all the tools and materials on hand for the repairs of the same; and the said locks and dams, lock-houses, grounds, buildings, tools, and materials, shall thereby be leased to the said company for the term of fifty years; in consideration whereof said company shall pay into the treasury of this commonwealth, for the use of the sinking fund thereof, the sum of twenty-five hundred dollars a year, payable into the treasury semi-annually, on the 1st day of January and 1st day of July. Should the said company at any time fail to pay the same at the time when it is properly due, the president of the board of internal improvement shall enter upon and take possession of all the works of said company, and of the locks and dams already built, and shall hold the same on behalf of the state until all arrears of rent are paid: *provided* that said company shall return to the state in good repair, at the expiration of the lease herein granted, all the property of the state hereby leased, and to secure the same a lien shall exist upon all the property of the said company."

And the ninth section of the charter provides "that the county courts of the several counties bordering upon the Kentucky River, or interested in its navigation, may, on the application of the corporation named in the first section, or

of the directors of said company after its organization, a majority of all the justices of the peace being present, subscribe stock in said company, and levy a tax on the taxable property of said county· sufficient to pay the whole amount of said subscription in three years from the time it was made, which tax shall be collected in all respects as taxes for state revenue are now collected."

The other provisions of the charter, as well as the subsequent acts of the legislature referred to in the argument, not being essential to the questions which will be considered in this opinion, need not be stated.

In September, 1865, the Jessamine County Court ordered that a subscription of thirty-five thousand dollars be made on the books of the company, and in November following the further sum of sixty-five thousand dollars, as capital stock, which was done by an agent appointed for that purpose; and in September, 1867, the Mercer County Court in like manner ordered a subscription of seventy-five thousand dollars of stock to be made, which was done. In April, 1867, the County Court of Garrard County ordered that a subscription of one hundred thousand dollars of said capital stock be made by an agent, with a condition annexed, in effect, that enough money should be subscribed to extend the improvement by slackwater in the Kentucky River to the mouth of Paint Lick on the north-eastern border of Garrard County; and this subscription appears to have been made. The county courts of Franklin, Woodford, Madison, Fayette, Clark, Owsley, and Estill counties, which, as well as Jessamine, Mercer, and Garrard, border on the Kentucky River, and also the municipal corporation of the city of Louisville, subscribed for large sums of the capital stock of the company, and a few thousand dollars more were subscribed by individual persons, besides the sum of one hundred thousand dollars by Bissett & McMahon, who after the organization

of the company were employed for the sum of one million dollars to make the locks and dams contemplated for extending the improvement to the "middle fork" of the Kentucky River.

At the January term of the Garrard County Court a motion of the president of the Kentucky River Navigation Company that a levy be made to pay the first installment of said subscription of that court of one hundred thousand dollars was heard, and the court thereupon refused to make the levy. And afterward, at the April term, 1870, of the Garrard Circuit Court, the corporation, on its petition filed in that court, and notice to the members of the county court, moved the circuit court to award it the writ of *mandamus* to compel the county court to make the levy, which it had refused to do.

The motion was resisted on several grounds, both of law and fact, set forth in a demurrer to the petition, and an answer filed by the county court; all of which were adjudged insufficient upon a hearing of the cause, and the court awarded the *mandamus* against the county court, commanding it to levy and collect upon all the taxable property of Garrard County the sum of $33,333.33⅓, to pay the first installment of said subscription of stock; and the county court seeks the reversal of that judgment by this appeal.

By the defense in the court below, as well as in the argument for the appellant in this court, the power of the circuit court to coerce the levy by the county court has been questioned with reference to the sufficiency and regularity of the organization of the corporation, and its consequent right to accept the subscription of stock, and the validity of the action of the county court to create a binding obligation on the county, subject to enforcement by that court, as a ministerial act; and also with reference to the validity of the act of incorporation as a delegation of the power of taxation to the county court, either to subserve a general purpose of the

state, or to promote a particular local interest of common benefit to the people of the county to be burdened by the tax; and if any one of the grounds of objection thus taken for the appellant is maintainable, although all the others be untenable, the result must be a reversal of the judgment.

Deference for the action of the legislative branch of the government, not less than a just and proper appreciation of the great importance and magnitude of the enterprise involved, would lead us, if we could with propriety and consistently with official duty, to determine this cause by the solution of some one or more of the minor and less important questions presented, leaving undecided the graver ones directly affecting the constitutional validity of the charter. But the nature of the controversy is such as to call for a decision on the fundamental grounds of the defense relied on in the court below; and we do not feel at liberty to go round a plain duty merely because the task of discharging it is an unwelcome and an undesirable one to us.

It has been argued that, as the act of incorporation involved a leasing to the company of the public works on the Kentucky River, which had been dedicated to the use of the sinking fund, it was in violation of the thirty-fourth section of the second article of the state constitution, as operating to diminish the resources of that fund; and also that it violated the thirty-sixth section of the same article in providing for the creation of a debt on behalf of the commonwealth without a submission of the proposition to the vote of the people; and still another objection is that the act provided for the appropriation of money or the creation of a debt exceeding one hundred dollars, and was not, on its final passage, voted for "by a majority of all the members then elected to each branch of the General Assembly, and the yeas and nays thereon entered on the journal," as required by the fortieth section of the same article of the constitution.

These objections, though cogently urged in the argument and certainly entitled to grave consideration, will be waived because the necessity for determining the questions they involve will be obviated by the decision of another point, which we regard as more formidable and of more vital importance. Is the proposed tax prohibited by the fourteenth section of the bill of rights, in the words "nor shall any man's property be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him?"

The power of taxation is certainly an inherent right of sovereignty, and indispensable to the very existence of government; but another great fundamental principle is equally true, that the constitutional guaranty of protection of property is not only the citizen's security against spoliation, though attempted under the guise of taxation, but also against the imposition of unequal and undue assessments on the part of the government. And while it is undeniably true that the legislature, as the general depository of power, subject to the limitations of the constitution, may provide for raising public revenue, and prescribe the objects to be provided for or aided by its expenditure, and may also, for particular local objects and purposes, delegate the taxing power to the authorities of counties or other municipal subdivisions of the state, the power of imposing the burden of taxation, whether exercised in the one way or the other, is still limited by the two important conservative principles of *security* against its own perversion and abuse and *equality* as far as practicable in the imposition of the burden.

The Kentucky River being by legislative recognition and in fact a navigable stream, for the improvement of which the state had expended vast sums of money by successive appropriations since the year 1801, with a view to its general use as a medium of intercommunication and commerce, and in

which, by the act of incorporation in question, the common-wealth retained valuable interests, besides the sovereign right of eminent domain, it is a question worthy of consideration whether the taxation imposed on the inhabitants of Garrard and other counties bordering on the river should not be con-strued to be an enforced contribution for fostering and pro-moting the general wealth and prosperity of the state, rather than in the aspect of the merely local benefits to be derived incidentally from it by the people of those counties; and if this be so, the manifest inequality of the burden imposed would at once demonstrate the unconstitutionality of the law imposing it.

But we propose to examine the question of constitutional authority to make the assessment with reference to the local benefits which it is supposed would result from it to the com-munity taxed, and which certainly constitute the most plausible grounds relied on for sustaining the judgment of the circuit court; fully recognizing, as we do, the principle as authorita-tively settled by numerous decisions of this court, that the legislature can delegate to the authorities of any organized community in the state the power of taxation for local pur-poses; and, acting within its proper sphere, the county court is a competent agency for levying the tax.

As was intimated by this court in the case of Cheany v. Hooser (9 B. Monroe, 344), and also in the City of Covington v. Southgate's heirs (15 B. Monroe, 491), it is often a delicate and difficult judicial question to determine what may be the precise limit of the power of local taxation; but we perceive no valid objection to the rule as stated in the recent decision of the Supreme Court of Michigan, in the case of The People v. Township Board of Salem, that "if the tax is imposed upon one of the municipal subdivisions of the state only, the purpose must not only be a public purpose as regards the people of that subdivision, but it must also be local; that is to say, the

Mercer County Court v. Kentucky River Navigation Company.

people of that municipality must have a special and peculiar interest in the object to be accomplished, which will make it just, proper, and equitable that they should bear the burden rather than the state at large, or any more considerable portion of the state."

Testing the essential question in this case by the foregoing rule, it is difficult to see how the advantages to be attained by slackwater navigation on the border of Garrard County can be brought within the range of local objects and benefits of such peculiar and common interest to the community as to render them proper objects to be accomplished by local taxation. It is not every private or even every public convenience, nor every facility for particular classes of business, industry, or enterprise, however valuable to those who may seek to profit by it, that is of general and peculiar benefit to a whole community; on the contrary, it not unfrequently happens that in the incessant struggle for wealth and financial ascendency going on in a prosperous country the greatest advantages to some classes are correspondingly detrimental to others, who from their very weakness deserve especially the protection of the government. The merchant and the banker, the manufacturer and distiller, may each represent large and valuable interests, and in their own prosperity incidentally benefit others; but who can say that to establish or sustain them in their respective pursuits at public expense would not be a flagrant exercise of arbitrary power, and why should any particular class who might seek to profit by the advantages of navigation and commerce be more favored by the government?

The underlying principle of taxation, and, as we conceive, the only safe and maintainable ground for upholding it, either for general or local purposes, is compensation in some form resulting from it to those who may be compelled to bear its burdens. Women and children and others unfitted for successful business pursuits, but owning the means necessary for

their own comfortable support, may look in vain to the prosperity or success of others having the necessary talents or capital to profit by particular advantages for a just or adequate recompense for the burdens of an onerous tax exacted to procure those advantages. But it is seldom difficult to discern the true grounds on which just and authorized local taxation should rest, and to which, so far as may be consistent with established precedent and prescriptive usage, the safety of private property requires that it should be restricted.

All thoughtful and law-abiding members of an organized local community will readily recognize the justice of enforced contributions, equally and fairly exacted, not only for the support of their local government, but for the promotion of the common purposes of communication, health, and public safety, and commerce necessary for the public good, and in which that community in its organized form has an especial and peculiar interest, for each individual is presumed to be compensated for the tax he may pay by his share of the common benefits secured. But it is difficult to perceive how this can be so with reference to the establishment of an ordinary private corporation, however great may be its influence for enhancing the property of the wealthy, or stimulating or promoting any particular private business or pursuit.

We are aware that these views may seem, at first blush, to militate against some of the principles of the decisions of this court in the cases of Talbott v. Dent (9 B. Monroe, 526), and of Slack v. Maysville and Lexington Railroad Company (13 B. Monroe, 1), and subsequent cases involving the power of local taxation in aid of railroad companies. But an examination of those cases will show that a controlling consideration for treating railroads as proper objects for local taxation is that, partaking as they do of the nature of public highways leading to or through a county or city, they most efficiently subserve the purposes of a road for access, travel, and trans-

portation, and thus not only conduce to the prosperity of a local community, but, like turnpikes, bridges, and other public conveniences, they are considered objects of peculiar special and public local interest.

We have failed to observe in either of the adjudged cases referred to such analogy to this as to entitle them to the influence of controlling precedents in this case. In one aspect it is conceded the proposed improvement of the Kentucky River might differ from the ordinary objects of private enterprise in its effects on the local interests of the people of Garrard County; it would inure to their convenience for the purposes of travel and transportation by water. But we can not regard this, in a constitutional sense, as a commensurable and adequate compensation to the whole people of that county, as a local community, for the imposition upon their property of the proposed tax of one hundred thousand dollars.

The increased advantages for traveling by water resulting from the improvement of the river forming one of the lines of that county, which is rendered inaccessible for ordinary purposes, except at a few points, by the natural cliffs and banks of the river, can not, we think, in any proper sense, be considered as equivalent to the ordinary facilities of traveling by convenient roads, rendering all parts of the county accessible to the people, in their own chosen modes of conveyance, for purposes of pleasure, or religious worship, or public or private business.

Navigable rivers, it is true, are a species of public highway, and often of great value to the public both as thoroughfares of travel and channels for commerce; and in these we admit their analogy, in some respects, to railroads. But that analogy rather exists with reference to certain objects of general commercial interest than the peculiar local benefits which in this and other states have been recognized as constituting the true basis of municipal taxation in aid of railroad corporations.

VOL. VIII.—22

Mercer County Court v. Kentucky River Navigation Company.

The navigation of the Ohio River is of immense public importance, and no doubt of great incidental advantage to the inhabitants of every county of this state bordering upon it; but a proposition to improve the present facilities for navigating that river by local taxation on the people of those counties could not, we presume, be seriously considered as constitutional or just. Most obviously such an improvement would be too general and comprehensive in its beneficial results to admit of its accomplishment at the expense of the particular local communities mentioned rather than the general public to be benefited by it.

There is another reason indicating an important distinction between the improvement of navigable rivers and the constructing of railroads by private corporations for public use, and which seems to illustrate the principle that generally the former kind of improvement is not an appropriate object for local taxation. Unlike railways and other merely artificial means of travel and transportation created by private enterprise, navigable rivers belong to the people in general as public highways, and must continue to be so, however improved; and, being subservient to commerce, have by the well-settled doctrine of English common law been considered as things of common right. (Angell on Water-courses, 201.) Being the property of the state for the use of all her citizens, why should they for the purpose of improving them be made the objects of discriminating or unequal assessments on account of mere incidental benefits resulting from proximity to them, any more than the public buildings and other property of the state which may, under peculiar circumstances, be more beneficial to some classes of the people than to others?

The additions and improvements now being made by the state to her capital buildings, rendering the city of Frankfort more attractive, and furnishing an increased assurance of the continuance of the seat of government in it, and thus

operating to enhance the value of the property of its. citizens, is no doubt of much benefit to them; but surely this incidental local benefit could constitute no sufficient ground for imposing on them, as a local community, any part of the cost of these public buildings.

Whether or not the legislature may constitutionally provide by general taxation for the improvement of the Kentucky or any other navigable river of the state is an ulterior question, on which we have not intended to express any opinion in this case, nor would we be understood as deciding that the advantages of slackwater navigation to a local community may not, under any circumstances, be such as to make them proper objects for municipal taxation, especially if the tax be imposed by the vote of the people to be taxed.

It has been argued, notwithstanding the general interest of the state in the improvement of the Kentucky River, that the proposed improvements would especially promote the interests of the people of the adjacent counties by increasing the value of their lands, and furnishing facilities for trade and lucrative employment; but that may be equally true with reference to many large manufacturing establishments, owned by corporations or individuals, which incidentally enhance the value of contiguous property, and afford employment for some persons and a convenient market for others.   And as in either case it is obvious that only particular classes of persons in a community can be materially benefited, it logically results that to foster either enterprise by local taxation would make the appropriation of private property to public use without just compensation, or, what is worse, taking the property of one class of the people and giving it to another.

While we recognize the decisions of this court to which we have referred as authoritatively settling the questions they involve with reference to railroads as objects to be attained by the aid of municipal taxation, we do not feel authorized

to regard them as precedents for sustaining by that means any general system of internal improvement; and if the question of power with reference to railroad corporations were altogether a new one, we might, upon very high authority, "entertain great doubts and serious hesitation in regard to the practice coming appropriately within the range of municipal powers and duties." (Redfield on Railways, 535.)

There is yet another aspect of this case which presents a grave, if not an insurmountable, cause of objection to the validity of the taxing power sought to be enforced. The act of incorporation does not stop with providing for local assessments for extending slackwater navigation along the borders of the counties to be affected by building the additional locks and dams contemplated; but it goes further, and operates, in effect, to impose on the people of those counties contributive responsibility to the state for an annual rent of two thousand five hundred dollars a year for the public works already constructed and in operation on the river for a term of fifty years. If it should be conceded, for the sake of the argument, that the tax can be upheld on the ground of its local benefits to the extent of the proposed additional works, it is difficult to discover any maintainable ground for coercing the local communities concerned to become parties to this legislative contract between the corporation and the state. To admit the power of a county court or other municipal authority, with or without legislative sanction, to assess private property in aid of any scheme or enterprise instituted by a private corporation or any individual, not the subject of peculiar local interest to the people to be burdened, would involve the surrender of the great principles that the right of property is before and higher than even any constitutional sanction, and that no civil government is entitled, in ordinary cases and as a general rule, to regulate the use of property in the hands of its owners.

If the facilities for navigating the Kentucky River already provided by the commonwealth at great public expense are of local benefit to the people of Garrard County, we do not see how any peculiar local interest of that community would be promoted by transferring the management of the public works from the state to a private corporation. Therefore, considering the contract with the state as disconnected from the additional improvement of the navigation of the river, the imposition of a share of its responsibilities and risks on the people of Garrard County by compelling them to take stock in the company could not be sustained.

It may be said, however, that although the county court could not bind the people of the county as a contracting party with the state, that fact did not vitiate the subscription of stock for the other purposes contemplated by the act of incorporation. But while it is a rule of law that if a statute attempts to accomplish two or more objects, and is void as to one, it may still be valid as to the others; yet if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portion. "And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently, then if some parts are unconstitutional all the provisions which are thus dependent, conditioned, or connected must fall with them." (Cooley's Constitutional Limitations, 178.)

But whatever might be the effect of the contract with the state on the validity of the subscription of stock by the county court, we are satisfied, for the other reasons already sufficiently indicated, that the subscription was unauthorized, and consequently the judgment awarding the *mandamus* is erroneous.

Wherefore the judgment is reversed, and the cause remanded with directions to dismiss the motion.