JUDGE LINDSAY
delivered the opinion oe the court.
At the November term (1851) of the Mercer Court of Claims the following order was made and entered:
“ Ordered, that the judge of the county court subscribe for stock in the road leading from Harrodsburg to Maxville, etc., to make a bridge across Salt River, $1,000.”
The Springfield, Maxville & Harrodsburg Turnpike Company was at that time constructing, or about to construct, its road between the two points named in the order. It may *256 fairly be inferred from the answer of the company that the action of the court was had at its instance and upon its solicitation.
Pursuant to the order the county judge entered the subscription upon the books of the company, and the amount subscribed was in due time paid upon the orders of its officers and appropriated to the construction of the bridge across Salt River, which structure was erected by, and was necessary for the uses and purposes of, the corporation.
This suit in equity was instituted to compel the turnpike company to issue to the county court certificates for the shares of stock thus subscribed and paid for, and for an account for dividends alleged to have been realized and declared.
The relief sought is resisted on several grounds, the principal of which is the want of authority upon the part of the county court to make the contract of subscription. We are satisfied the court had no such authority, but we do not see that it therefore necessarily follows that the turnpike company can hold to the money obtained through the unauthorized action of said court, and refuse to comply with its agreement to issue and deliver to it, as it is bound to issue and deliver to all other persons or corporations, certificates for so much of its capital stock as may have been subscribed and paid for.
Counsel misapply the doctrine recognized in the Kentucky River cases (8 Bush, 300), and in the Clark County case (11 B. Mon. 146). In these cases the county courts were resisting the enforcement of their alleged subscription for the stock of the corporation, claiming, first, that they had no authority to make the contracts of subscription; and second, that their power, if they possessed it, had been so defectively executed as not to bind the counties represented by them.
Here the county court has carried out its undertaking to the letter.
*257 The contract did not bind it; but the amount subscribed was paid, and now when it demands the property purchased the party that made the sale and received the contract price is attempting to avail itself of the court’s want of authority in-order to escape the performance of its part of the contract.
The tax-payers of Mercer County, the constituents-of the. county court whose funds were misappropriated, might with propriety have questioned the act of their agent; but we are-aware of no rule of law that enables the company to retain the money obtained by and through the usurpation of power by the county court, and then, by refusing to issue the certificates for the shares of capital stock thus paid for, to appropriate said money to its own uses and purposes without liability to any one.
It is certain that the public money of the county has been used to pay for fifty shares of the capital stock of the com-’ pany, and there can be no reason assigned why the county shall not be invested with the evidences of title to the purchased property.
Its want of legal capacity to purchase and hold stocks is a matter with which appellee has nothing to do. As well might a party purchasing property from an infant or married woman keep' the property, and refuse to pay for it upon the ground that they had not the legal capacity to contract, as for appellee to be allowed to avail itself of this defense.
We regard it as immaterial that the order of the county court provided that the money subscribed should be used in the construction of the bridge across Salt River. The company had the right to accept a conditional subscription for stock, and in this instance it seems to have exercised that right.
The destruction of the bridge by Bragg’s army in 1862 in no wise affected appellant’s claim. It was the company’s bridge that was destroyed, and appellant can only be required to share with the other stockholders the common loss.
*258 The plea of limitation can not avail as against the right of the county court to have the certificates of stock issued. There is no proof in the record tending to establish that the right of the county court to the stock was ever called in question until a short time before the commencement of this proceeding.
• If it be conceded that a corporation can rely on lapse of time against a stockholder who merely demands the evidence of title to his stock (a question we do not decide), the statute certainly will not begin to run in its favor until the stockholder is notified by some unequivocal act that his right to the stock is disputed. Until he receives such notice he has the right to regard the corporation as his agent, and as holding in trust for him his interest in the corporate property.
The statute does apply, however, as to dividends which, as in this case, have been appropriated by the company.
The judgment dismissing appellant’s petition is reversed, and the cause remanded with instructions to require appellee to issue and deliver to the county court, for the use and benefit of Mercer County, a certificate for fifty shares of its capital stock, and also to ascertain the amount to which appellant is entitled (on said fifty shares) in the way of dividends for the five years next preceding the institution of this action, and to render judgment in its favor for that amount.