CASE 36—PETITION FOR MANDAMUS—OCTOBER 1.

# Winchester and Mt. Sterling Turnpike Road Co. vs. Clarke County Court.

### APPEAL FROM CLARKE CIRCUIT COURT.

Where the charter of a turnpike road company authorizes a county court to take and subscribe stock in the company, the subscription can be made only in the manner and upon the terms provided by the act of incorporation. In such case a *"subscription of stock in said company"* is the only description of *contract* which the court can make with the company.

*Quere.* Can a county court, under an authority to take and subscribe stock in a turnpike road company, make a valid subscription before the organization of the company?

The Clarke county court was authorized by the charter of the Winchester and Mt. Sterling turnpike road company to take and subscribe stock therein. Before the organization of the company the court made an order which, after making a subscription of stock in the Paris, &c., turnpike company, recited that "to continue a turnpike road to Mount Sterling, to be expended between Winchester and the Montgomery county line, they also pledge the county for $5,000," &c. *Held*—That the order is not a subscription of stock, absolute or conditional, present or future, in the Winchester and Mount Sterling turnpike road company; and imposes no legal liability upon the court or upon the people represented by it.

The order of the July term 1849, mentioned in the opinion, is as follows: "With the concurrence of a majority of all the magistrates of the county, ordered that the county court, on behalf of Clarke county, subscribe, as they hereby do, for fifty shares of stock in the Paris, Winchester and Kentucky River Turnpike Road Company, to aid in constructing said road from the Bourbon line to Winchester, and furthermore to aid in constructing the said road from Winchester to the Kentucky river, this court subscribes for and pledges the county for fifty other

shares of stock. And to continue a turnpike road to Mount Sterling, to be expended between Winchester and the Montgomery county line, they also pledge the county for $5,000, and to construct a turnpike from Winchester to Red river, also pledge the county for $5,000. It is understood that the above amounts respectively shall not be called for until there is a sufficiency of stock taken by individual stockholders to complete, with the aid of the above respective amounts, the said roads, unto the points above respectively designated, but as each point may obtain a sufficiency of stock, then as to that part the call may be made."

JNO. B. HUSTON, for appellant, cited 11 *B. Mon.*, 143; 2 *Met.*, 78, &c.; *Winchester and Mt. Sterling Turnpike R. Co. ads. Justices of Clarke, MS. opin. June*, 1856.

BUSH & BUCKNER, for appellee, cited 11 *B. Mon.*, 143; *Justices of Clarke vs. Winchester and Mt. Sterling Turnpike Road Co. MS. opin. June*, 1856; 8 *B. Mon.*, 140.

CHAS. S. HANSON, on same side, cited 11 *B. Mon.*, 143; *Justices of Clarke vs. Winchester and Mt. Sterling Turnpike Co., MS. opin., June*, 1856.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

The legal effect and character of the order made by the Clarke county court, at its July term, 1849, is the only question to be considered.

The only authority conferred by the legislature upon the Clarke county court to subscribe stock in the "Winchester and Mt. Sterling Turnpike Road Company," is to be found in the 22nd section of the act amending the charter of the company, approved February 26, 1849, which repealed the 3rd section of the original act, passed in 1848. The section alluded to provides, in general terms, that the county courts of Clarke and Montgomery may, for their respective counties, take and subscribe stock in said road company. It is not pretended that the county court possessed any other power, or derived authority from any other source, to bind the county by a subscription of stock. And it is equally clear, that a "*subscription*

*of stock in said company"* is the only description of *contract* which the court had any legal authority to make with that company.

By the second section of the amendatory act it is provided that the capital stock shall be divided into shares of one hundred dollars each, "and books for the subscription of stock shall be opened on the third Monday in March next, or as soon thereafter as said commissioners may direct."

The 5th section declares, that upon the election and qualification of the president and directors of the boards for either of the two counties, (of Clarke and Montgomery,) they shall, separately and independently, constitute bodies politic and corporate, in deed and in law, having power to perform business, &c., by the name and style of the "Winchester and Mount Sterling turnpike road company;" and which corporate existence and name shall comprehend and continue for the stockholders of such road when it shall have been completed, and a common president and directors shall have been elected by the stockholders. And by said name the company shall have perpetual succession, and the rights and franchises incident to such a corporation, and shall be capable of taking and holding their capital stock, to sell and convey real estate, to sue and be sued, to have a common seal, &c., &c.

Now, it is an undisputed fact, appearing in the record before us, that at the time the order in question was made there had been no election of officers as here provided for, nor had there been any step taken towards the organization of the company. It follows that there was no corporation, having power to contract or be contracted with, or capable of taking or holding the capital stock, or of doing any other matter or thing, within the object and scope of the charter, which a body corporate might do. The existence of these and all other corporate powers was made to depend, by the express terms of the charter, upon the election and qualification of the officers, &c.

In this condition of things it might well be asked, what power the county court had to "take and subscribe stock," and thereby to become a member of a corporation that had no existence as such, and had no capacity to take or hold the capital

stock of the company? Or, in other words, what authority had the county court to bind the people and property of the county by a contract which could impose no obligation upon the other party to the contract, for the reason that such other party was not then in being? Was it legally possible that the county court could, at that time, under any authority given by the act of incorporation, have made a subscription of stock, so as to bind its principal—the county of Clarke—and so as to create the obligations, as well as the vested rights of a stock-holder, however regular the subscription, as to mere matter of form, may have been?

Our view, however, of the construction and effect of the order, which, it is claimed, operates as a subscription of stock, will dispense with any discussion of these questions.

We are of opinion that the order under consideration does not, by its terms, import a subscription of stock, and that it was not so intended or understood by the court. It would be needless to advert to all the various considerations arising on the face of the order itself, which, in our judgment, imperatively repel the opposite conclusion.

In the case of the *Justices of Clarke vs. Paris, Winchester and Ky. River Turnpike Co.*, (11 *B. Mon.*, 143,) the question was, whether so much of this order as related to the appellee amounted to a valid and binding subscription of stock in that company. And one of the prominent reasons assigned by the court for the construction of that part of the order was founded on the difference between its language and that used in reference to the *pledge* of $5,000, for the construction of *a turn-pike road* to Mt. Sterling. This contrast is at least significant of the view then entertained by the court, as to the effect of that part of the order which relates to the latter road. The same difference in the language is again remarked upon in the opinion delivered in this case, when it was here on a former occasion, and in a way, too, which strongly expresses a disinclination to concur in the construction of the order which was then and still is contended for by the appellant. That opinion, brief as it is, abounds with suggestions of the same import: "And, therefore, if the pledge be obligatory according to its terms."

"If *such* a *promise*, made when there was *no company*, and, so far as appears, no commissioner or agent to receive it, was obligatory upon the county, so that it might be enforced at any time afterwards," &c. "*Whether* this should be regarded as an actual subscription, to become absolute on the condition," &c.; and, "*if* upon performance of this condition this pledge is enforceable," &c.

But we do not rest the construction, which we feel compelled to give to the order, upon the intimations thrown out in the two opinions referred to. The order itself furnishes abundant evidence that the county court well understood the meaning and effect of the language they employed with respect to the several roads mentioned in it, and that the court well understood the difference between a subscription of so many shares of stock in a road company, effectually organized and in a condition to receive subscriptions, and to exercise its legal functions as a corporation; and a mere pledge of the county for $5,000, to construct a road, &c. The subscription to the Paris road is complete and full, expressed in apt terms, and is technically correct in form. The language is, "ordered that the county court, on behalf of Clarke county, *subscribe*, as they *hereby do*, for *fifty shares of stock* in the Paris, Winchester, and Kentucky River Turnpike Road Company," &c. "Such an order," said this court, in the opinion before referred to, "declaring that the court *thereby subscribes* the shares which it was *authorized* to subscribe, evidences the highest obligation which the court can impose on itself. It is the essence and substance of a subscription of so many shares." And it was therefore held to be as obligatory as if the subscription had been made in the books of the company.

But there is no subscription of stock, absolute or conditional, present or future, in the Winchester and Mt. Sterling turnpike road company. That corporation is not even mentioned in the order, and, indeed had no existence, as already shown. The court undertake merely to pledge the county for $5,000, to be expended between Winchester and the Montgomery county line, for the construction (or continuation,) of "*a turnpike road to Mt. Sterling.*" To whom is this *pledge* made? Where is

Winchester and Mt. Sterling Turnpike Road Co. vs. Clarke County Court.

the basis for the assumption that it was made to the appellant —a corporation that had no legal capacity to contract or be contracted with; that had no power to accept a subscription of stock if one had been tendered, and certainly just as little power to accept a pledge of the county for $5,000, to be expended in the construction of a turnpike road. But the county court had no authority to pledge the county in any form or to any extent, nor to create any debt or obligation enforceable by this company, in any mode, save that specially prescribed by the statute. The authority of the court was limited to a subscription of stock in said company, which subscription could be made only in the manner and upon the terms provided by the act. Such a subscription would have created all the obligations to which the stockholders were subjected, and would, at the same time, have conferred upon the court all the benefits and privileges to which other stockholders were entitled.

Stress is laid upon what is said in the order as to the condition on which the "*above amounts*" are to be called for. The condition is, in substance, that said *amounts* shall not be called for until there is enough stock taken by individuals to complete, with the aid of those amounts, the roads to the points designated; when that is done—that is to say, when there shall be such sufficiency of stock *subscribed* by individuals—the two *amounts of* $5,000 each shall be *called for*. The charter of the company provides that the call upon the subscribers of stock shall not exceed *one-sixth* of the total amount at a time, nor be made on shorter periods than six months.

This variance between the terms of the pledge and the provisions of the charter, so far from showing that it was intended as a subscription of stock under the charter, shows the very reverse.

We have nothing to do with the moral aspects of the question. Our inquiries have been confined to the legal effect and operation of the action of the county court, and our conclusion is, that it was not such as to impose any legal liability upon the court, or upon the people represented by it, and that the petition of the appellant was therefore properly dismissed.

The judgment is affirmed.