Julius Pitzman

v.

The Village of Freeburg.

92  111
140  37
92  111
153  552

92  111
167  569

1. Municipal subscription — *whether power exists.* There is no implied authority in municipal corporations to incur debts or borrow money in order to purchase stock or subscribe for shares of stock in railroad corporations, but such authority must be conferred by express grant, and can not be assumed from implication or innuendo, merely.

2. Same—*power of villages, under charter of Belleville and Southern Illinois Railroad Company, and the act of* 1849. The charter of the Belleville and Southern Illinois Railroad Company authorized the directors of the company to receive subscriptions to the capital stock of the company, as might be prescribed by their by-laws and regulations, "from any county, city, town or village," and the charter further provided, "any such subscription shall be valid and binding upon any county, city, town or village making the same: *Provided,* said subscriptions shall be made, in every respect, subject to the provisions and restrictions of an act entitled 'An act to provide for a general system of railroad incorporations,' approved November 6, 1849:" *Held,* the charter did not confer power upon municipal corporations to subscribe to the stock of the company, nor did the reference to the provisions of the act of 1849 enlarge the terms of the grant.

3. The act entitled "An act to provide for a general system of railroad incorporations," approved November 6, 1849, in so far as it provides for municipal subscription to the capital stock of railroad companies, has no reference whatever to villages, but applies only to counties and cities.

Appeal from the Appellate Court of the Fourth District; the Hon. Tazewell B. Tanner, presiding Justice, and the Hon. George W. Wall and Hon. James C. Allen, Justices.

The appellant declared against the appellee, in the court below, on an account stated.

It is agreed that the facts given in evidence on the trial were as follows:

"In 1836 the town of Urbana was laid out and platted; that in 1859 the legislature, by special act, changed the name of said town to Freeburg; that in 1867 the legislature, by a special act entitled 'An act to amend the charter of Freeburg, in St. Clair county,' incorporated the town of Freeburg, (see

vol. 3, Private Laws 1867, p. 201,); that in 1875 said town organized as a village under the general law of 1872; that the assessed valuation of said town has never exceeded $70,000; that in 1869 an election was held in said town to vote upon the question of subscribing $15,000 to the capital stock of the Belleville and Southern Illinois Railroad Company; that the result of said election was 100 votes in favor of, and 11 votes against, taking the stock; that the town council of said town, in 1869, passed an ordinance authorizing the subscription, and that in pursuance thereof bonds to the amount of $15,000 were issued and delivered to said company; that the town paid the interest on these bonds for two years; that this suit is brought on a coupon of said bonds; that the plaintiff is an innocent holder of said coupon for value, and at the time he received the same did not know for what particular indebtedness of said town of Freeburg the bond had been issued; that this suit involves the validity of said $15,000 in bonds, issued by said town; that the several acts of the legislature herein referred to shall be considered in evidence; admitted that the defendant can prove, by parol, that Freeburg was never incorporated prior to 1867; that an act of the legislature entitled 'An act to incorporate the Belleville and Southern Illinois railroad,' approved February 14, 1857, shall be considered in evidence. (See Laws of Illinois, 1857, at page 707.)"

The plaintiff here read in evidence the coupon upon which the suit is brought, which was all the evidence offered by either party.

Judgment was rendered in favor of the defendant, and the plaintiff appealed to the Appellate Court of the Fourth District, where the judgment of the circuit court was affirmed. From that judgment the present appeal to this court is prosecuted.

Mr. R. D. W. HOLDER, for the appellant.

Messrs. KŒRNER & TURNER, and Messrs. WILDERMAN & HAMILL, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The question here is, was appellee empowered to make a valid subscription for capital stock of the Belleville and Southern Illinois Railroad Company.

The only legislation claimed to confer such power is this: Section 9 of the charter of the Belleville and Southern Illinois Railroad Company provides: "The directors of said company, after the same is organized, shall have power to open books at such time and places as they may deem proper, for the subscription of stock, until the whole amount of the capital stock shall be subscribed, or such parts or amounts thereof as they shall desire to have subscribed; and said directors are hereby authorized and empowered to take and receive subscriptions to their said capital stock, on such terms and in such amounts as they may deem for the interest of said company, and as they may prescribe by their by-laws and regulations, from any other railroad company or corporation, and from any county, city, town or village; and any such subscription shall be valid and binding upon any railroad company, corporation, county, city, town or village making the same: *Provided,* said subscriptions shall be made, in every respect, subject to the provisions and restrictions of an act entitled 'An act to provide for a general system of railroad incorporations,' approved November 6, 1849."   *   *   *   Private Laws of 1857, p. 710.

The act of November 6, 1849, (2d sess. p. 28,) is, in fact, as its title shows, supplemental to "An act to provide for a general system of railroad incorporations." (2 Purp. 1072.) It authorizes, by its first section, subscriptions or purchases of the shares of capital stock in any railroad company, in any sum not exceeding $100,000, by any *city* or *county,* where the citizens thereof shall be desirous therefor, and provides that "the stock so subscribed for or purchased shall be under the control of the county court of the county or *common council of*

*the city* making such subscription or purchase, in all respects as stock owned by individuals." The other sections merely relate to the details, such as holding the election to ascertain the desire of the citizens of the municipality, borrowing money, issuing bonds, etc., etc.

Bearing in mind that there is no implied authority in municipal corporations to incur debts or borrow money, in order to become purchasers or subscribers for shares of capital stock of railroad corporations, and that such authority must be conferred by express grant, and can not be assumed from implication or innuendo, merely, it would seem evident there was here no power conferred upon appellee to make subscription for shares in the capital stock of the Belleville and Southern Illinois Railroad Company.

The section of the railroad company's charter quoted above does not assume to confer any power whatever on municipal corporations. It simply confers power upon the directors of the railroad company to receive subscriptions, "on such terms and in such amounts as they may deem for the interest of the company, and as they may prescribe by their by-laws and regulations." The grant is to the directors, and to no one else, and the gist of it is the discretionary power conferred in respect to the "terms" and "amounts" of the subscriptions to be made. True, it contemplates subscriptions will be made by counties, cities, towns and villages, but it does not say cities, towns and villages are *thereby empowered* to make such subscriptions. So, also, it contemplates subscriptions will be made by persons and by other railroad corporations, but it could hardly be seriously argued that this authorizes infants, lunatics, or other persons laboring under legal disability, and railroad companies whose charters do not expressly authorize them to take stock in other railroad corporations, to make such subscription. The clear and reasonable implication is, that the subscriptions are to be made by persons and corporations already endowed with the legal capacity to make such subscriptions.

Nor does the reference to the provisions of the act of 1849 enlarge the terms of the grant. The proviso is, that the subscriptions " shall be made, in every respect, subject to the provisions and restrictions" of that act. It does not even provide that the corporations thereby empowered to make such subscriptions shall be empowered to make subscriptions for shares in the capital stock of this company, but, simply, the mode of making subscription and the restrictions imposed by that act shall govern.

That act has no reference whatever to villages. Its language, as has been seen, applies only to *counties* and *cities,* and so it can have no application to the present case.

We reached the same conclusion in *Flack* v. *Hughes,* 67 Ill. 385, that we have reached here, although we did not there explain our views at length.

The judgment below is affirmed.

*Judgment affirmed.*