## Voss et al. v. Waterloo Water Company et al.

[No. 19,918.   Filed June 3, 1904.]

Constitutional Law.—*Adoption of a Section from Constitution of Another State.*—Where a section of the Constitution of a state is adopted from other states, five or six of which have practically the same provision, the court will not assume that it was taken from any certain one and follow the construction placed thereon by such state prior to such adoption. *pp. 82, 83.*

Municipal Corporations.—*Indebtedness.—Ordinary Expenses.*—A contract by a municipal corporation for ordinary and necessary expenses to be paid for monthly, does not constitute an indebtedness in violation of the Constitution prohibiting indebtedness of municipal corporations for more than two per cent. of the taxable property thereof, since no indebtedness arises in such case until the end of each month, at which time, if such corporation has the money to pay such sum, the Constitution is not violated, but if such corporation does not have the money to pay, such indebtedness is void. *p. 84.*

Same.—*Extraordinary Expense.*—The building of a water-works or an electric light plant by a municipal corporation for furnishing water and light to such city and its inhabitants, is an extraordinary expense. *p. 85.*

Same.—*Evasion of Restrictions by Special Tax.*—A municipal corporation can not evade the limitations upon its powers of indebtedness, where not for special benefits, by the levy of special taxes for a special purpose, or by pledging payment out of any particular revenues of such corporation or from the income of any property of such corporation. *p. 85.*

MUNICIPAL CORPORATIONS.—*Purchase of Water Plant Subject to Mortgage.*—A municipal corporation can not purchase a water-works plant mortgaged for a sum in excess of two per cent. of such corporation's taxable property, even though it does not agree to pay such water company's debt, since such corporation is compelled to pay such debt or lose its property or the payments made thereon. Such transaction violates article thirteen of the Constitution. *p. 87.*

SAME.—*Construction of Water-Works.— Dummy Corporation.*—Where it is shown that the stock of a water company was $25,000, and only $5,575 was to be subscribed, $5,500 of which was by such municipal corporation and $75 by the officers and attorney of the company constructing the same, such three shares being for the purpose of having the directors necessary under the state laws, and the whole management, income and expense to be left to such municipal corporation, such corporation is the real owner of such water-works and such water company merely a dummy to assist in the evasion of the Constitution, and the whole transaction void. *pp. 87–89.*

CONSTITUTIONAL LAW.—*Fund.*—It is immaterial whether there is fraud or not in the violation of the Constitution. *p. 90.*

MUNICIPAL CORPORATIONS.—*Taking Stock in Water-Works.*—A municipal corporation has no power to take stock in a water-works or other company, or to borrow money or sell bonds therefor, unless expressly authorized by statute. *p. 91.*

STATUTES.—*Amendment.—Title.*—Where the title to an act provides that "cities" may sell and negotiate bonds for taking stock in water-works company, and an amendatory statute without changing such title extends the provisions of the act to "towns," *Quaere*, is the amendatory act Constitutional? *p. 92.*

SAME.—*Power to Take Stock in a Water and Light Company.*—A municipal corporation, having no statutory power to subscribe for stock in a water and light company, can not take stock therein and sell its bonds for the purpose of paying for such stock. *pp. 93, 94.*

From DeKalb Circuit Court; *W. M. Brown*, Special Judge.

Action by Charles Voss and others against the Waterloo Water Company and others for an injunction. From a decree for defendants, plaintiffs appeal. *Reversed.*

*C. M. Phillips* and *P. V. Hoffman,* for appellants.

*W. H. Leas, Allen Zollars, F. E. Zollars* and *C. H. Worden,* for appellees.

MONKS, J.—Appellants, resident taxpayers of the town of Waterloo, brought this action to enjoin the board of trustees of said town from issuing the bonds of said town to pay

for the stock in the Waterloo Water Company, and all appellees from taking any steps to establish or construct a water and light plant in said town, and from making any contracts concerning the same. A trial of said cause resulted in a special finding and conclusions of law thereon and final judgment in favor of appellees.

It appears from this special finding: That the assessed valuation of the property in the town of Waterloo for "state and county taxes" in 1901 was $385,000; the population was 1,244, and the indebtedness of said town was $1,600. Said town could not construct a water-works and electric light plant for the town, for the reason that said town had not sufficient money for that purpose, and could not borrow the money to construct the same without creating an indebtedness exceeding the constitutional limit, all of which was known to appellees; that the board of trustees of the town of Waterloo, desiring to secure for said town and the inhabitants thereof a supply of water and electric light for lighting the streets of said town, consulted with the president of the Olds Construction Company of Ft. Wayne, Indiana, which company was engaged in the business of erecting water and light plants for cities and towns and private corporations, in regard to the way to procure the same. He represented to said board of trustees that a combined water and light plant could be put up for said town for about $21,000; using the grounds and buildings of the town hall and fire engine room belonging to said town for the location of said plant. He also suggested to said board that a company be organized in which the town should take stock to an amount not exceeding the constitutional limit; that said company should issue its negotiable bonds in the sum of $17,000, with six per cent. interest, running a series of years; that said town should levy and collect electric light and water-works taxes as provided by law, and pay the same to a trustee for the bondholders, and that a part of the moneys so paid to such trustee should be used in

paying the interest on said. bonds, and the balance should constitute a sinking fund for the payment of said bonds; that by such stock subscription and the payment of said bonds by the application of said taxes to interest and sinking fund the town would eventually become the owner of said plant. Said board of trustees instructed the president of said construction company to have prepared a set of plans and specifications for such water and light plant as might be suited to the needs of said town, for which the town was to pay him $100. Said plans and specifications were afterwards prepared by the president of said construction company, and approved by said board of trustees, and filed in the office of the clerk of said town. No notice was given in any newspaper of the letting of the contract to construct said plant, but on September 2, 1901, the clerk of said town, pursuant to the direction of said board of trustees, sent out to certain companies, firms, and persons engaged in the construction of water and light plants for towns the following which had been prepared by the president of said construction company: "Notice. The town of Waterloo, Indiana, desires to secure the erection of a water-works and electric light plant, and to that end will grant a franchise to the party or parties whose proposition seems to the town board to be most favorable to the interest of the town. In order that all proposals may be on the same basis as to size, kind, quality and quantity of material, machinery, etc., the town board has adopted plans and specifications which are on file at the office of the town clerk, Waterloo, Indiana. Each proposal must state specifically the cost of the plant completed ready for operation in accordance with the plans and specifications and must be accompanied by a general outline of the franchise required by the bidder. The franchise must provide for the purchase or lease of the plant by the town at any time after its completion. Propositions must be in the hands of the clerk before 7 o'clock Monday evening, September 16, 1901, at which time the town

board will meet to consider and take action upon them. All propositions must be accompanied by a certified check in the sum of $500, payable to the order of the town treasurer to be forfeited to the town of Waterloo in case the bidder fails or refuses promptly to submit a franchise and proceed with the erection of the plant. Stephen A. Bowman, town clerk."

On September 16, 1901, said board of trustees received two bids for the construction of said plant, and said board awarded the contract to the Olds Construction Company, whose bid was as follows: "Ft. Wayne, Indiana, September 16, 1901. To the Honorable Board of Trustees, Town of Waterloo, Indiana. Gentlemen: If granted a franchise to be drawn in the form usual in such cases, we will construct in the town of Waterloo, a water-works and electric light plant in strict accordance with the plans and specifications now on file in the office of the town clerk, and under your supervision and to your approval, for the sum of $21,795. It is understood and agreed that the town board shall lease or sell sufficient ground for the boiler house and space in the town hall for the machinery as shown in the drawings now on file. And the town shall rent not less than fourteen hydrants and twenty-three arc lights for the term and at the price stipulated in the franchise. The town shall also subscribe $6,000 to the capital stock of the company which shall come into possession of the plant. Very truly yours." Signed by the Olds Construction Company.

At the time of awarding said contract said board of trustees directed the president of said construction company to have a company incorporated and ordinances prepared for the purpose of carrying out the plans he had explained to said board, as heretofore stated. Thereafter, said president caused duplicate articles of incorporation of the Waterloo Water Company to be prepared, signed, acknowledged, and filed as provided in §5051 Burns 1901, §3851

R. S. 1881 and Horner 1901. The capital stock was fixed at the sum of $25,000, divided into 1,000 shares of $25 each. The object of said corporation, as set forth in the articles of association, was to "manufacture power to furnish to the town of Waterloo, DeKalb county, in the State of Indiana, and its citizens, good and wholesome water; also electric light for both public and private use, and to own and hold the machinery, lands, tenements, easements, franchises, conduits, mains, plants, posts, poles, wires, and all other necessary appliances for supplying the same to said town." Said articles of association were so filed on September 20, 1901, and were signed and acknowledged by three persons who were named as the directors of said corporation for the first year, and each, immediately after filing said articles, subscribed for one share of stock in said corporation. One of the signers of said articles of association was, when he signed the same, and still is, a director, the president and general manager of the Olds Construction Company, and one of said signers was then, and ever since has been, a director and the vice-president of said construction company, and the other was then, and still is, the attorney for said construction company. On September 20, 1901, said board of trustees passed three ordinances, numbered five, six, and seven, to carry out the plan outlined by the president of said construction company. The first ordinance, known as "ordinance No. 5," granted to the Waterloo Water Company a franchise for fifty years "to erect, establish, construct, maintain, and operate within said town a system of water-works, according to such plans and specifications as may be adopted by said water company with the approval of the board of trustees of said town," and to use the streets, alleys, parks, and public grounds of said town for the purpose of constructing, operating, and maintaining within said town said system of water-works for furnishing water to said town and its inhabitants, provided that the construction, erection, equip-

ment, and operation of said system of water-works shall be under the supervision of the board of trustees of said town and its engineer, or any agent appointed by it; provided further that such grant if accepted should be irrevocable, subject only to the right of said town to purchase said system of water-works at any time at a price not to exceed the cost of construction and cost of additions thereto. In case the Waterloo Water Company, its successors or assigns, shall have issued any bonds for the construction, extension, or equipment of said system of water-works, and secured the same by mortgage on said plant and franchise, the lien of such mortgage shall not be affected by such purchase, but if said town shall become the owner of said system of water-works by purchase, as provided in this ordinance, the right or title of said town shall be subject to full payment of said bonds and the lien of said mortgage, and also to the payment of the hydrant rentals provided to be paid by said town under the provisions of this ordinance, and said hydrant rentals shall continue to be paid by said town in accordance with the provisions of this ordinance to the trustees named in this ordinance, upon the trust and upon the conditions contained therein; and said mortgage shall continue a first lien on all property, franchises, and rentals herein described until the full payment of said bonds, principal, and interest, and shall have the same force and effect as if the title to said property had remained in said water company.

The second section of said ordinance granted the right to occupy and use the ground and building upon which the town hall and fire engine room were situate, for constructing, maintaining, and operating thereon said water and light plants for the term of fifty years, with a provision that all the buildings and machinery erected or placed on said grounds should be considered personal property and in no case to become fixtures or regarded as real estate. The number of pumps, their capacity, the length of the water-

pipes and their sizes, the number of hydrants and their capacity, were fixed by said ordinance, and it was provided that the pumping-station, pumps, and distributing system should be built and constructed in strict compliance with the plans and specifications on file in the office of the town clerk.

Section three provided that said water-works should be fully completed on or before May 1, 1902, with a condition as to strikes, etc.

By section five it was provided that the water company should furnish and maintain not less than fourteen hydrants, which the town agreed to rent during said period of fifty years, and to pay therefor to said water company, its successors and assigns, an annual hydrant rental of $1,350, payable in two equal semiannual instalments, fixing the time, and that for all hydrants in excess of fourteen the town agreed to pay $60 each, payable as the other hydrant rentals. "And to the payment of the said rentals during the whole of the period of fifty years at the times and in the manner hereinbefore specified, the faith and credit of the said town of Waterloo is hereby irrevocably pledged to the said Waterloo Water Company, its successors and assigns. Provided, however, that should the said Waterloo Water Company, its successors and assigns, issue its mortgage bonds as hereafter authorized, so much of the said hydrant rentals as will be required to pay the semiannual interest on said mortgage bonds and provide a sinking fund for the payment of the principal of said bonds when the same become due, shall be set apart as a special fund by said town of Waterloo, and shall be payable by said town of Waterloo to the Ft. Wayne Trust Company, trustee, in trust and confidence on the express trust that said trustee shall pay the same in discharge of the interest and principal of the said bonds, to the holders of said bonds, at the time and place where the interest and principal of said bonds, by their terms, are made payable, and said hy-

drant rentals shall be applied to the payment of said interest and principal as the same shall become due, and to no other purpose. Said funds shall be held by said trustee inviolate, and they are hereby irrevocably pledged to the payment of the interest and principal of said bonds."

Section six, omitting the part left out when said section was amended by the board of trustees after this suit was commenced, was as follows: "The hydrant rentals referred to in section five of this ordinance shall be payable out of the taxes to be raised by the said town of Waterloo from year to year, and said town of Waterloo shall, and it hereby agrees, annually, during said term of fifty years, to levy and collect a tax upon all taxable property of said town sufficient to pay said hydrant rentals, and it is hereby ordered by said board of trustees of said town that such tax shall be levied and collected from year to year in the manner prescribed by law, and when levied and collected is hereby irrevocably pledged to the payment of said rentals, * * * provided, however, that said town shall not be obliged to levy or collect any special tax in excess of the amount now authorized by law for that purpose, unless the said town shall be authorized to levy and collect a greater tax. And the town further agrees, in case such special tax shall be insufficient to pay the hydrant rentals from year to year as herein agreed, that it will levy and collect with its general taxes, sufficient sums of money to pay all of the said hydrant rentals as aforesaid; but it is nevertheless provided that no understanding or obligation of the town herein shall create any debt of the town within the meaning of the term as used in the provision of the Constitution which limits the power of towns to incur indebtedness, and if for any cause there shall not be sufficient moneys in the treasury of the town applicable to the payment of the said rentals, to pay the same as they become payable according to the foregoing provisions, then the payment thereof shall be postponed until there shall be such moneys in the treas-

ury of the town; and the true meaning and intent of this section is that the said town of Waterloo shall be fully bound to levy and collect the taxes as aforesaid, and that said town shall faithfully apply all such taxes and all other money in its treasury which may lawfully be so applied to the payment of the hydrant rentals at the times aforesaid."

By section seven the Waterloo Water Company was authorized to issue the first mortgage bonds of said company to an amount not to exceed $17,500, bearing interest at the rate of six per cent. per annum, payable semiannually, and to secure said bonds by a first mortgage on said plant and all its property and franchises, including all contracts entered into by it, including the grant of said town; this authority being given to enable said water company "to provide a portion of the funds wherewith to construct, erect, equip, and complete said water-works plant and system."

Other sections provided a maximum rate for water furnished to private consumers, authorized the water company to make and enforce reasonable rules, and appoint a superintendent to represent the town in the construction of said system, and provided that the water company should not be liable for the salary paid or agreed to be paid to such superintendent.

Ordinance No. 6 authorized the president of the board of trustees of said town to subscribe for 220 shares of the capital stock of said Waterloo Water Company, at the par value of $5,500, and to represent the town at any meetings of the stockholders of said water company, and to vote said stock at such meetings. Said ordinance provided for the issuance of eleven bonds of said town for $500 each, dated November, 1902, payable twenty years after date, and bearing interest at the rate of six per cent. per annum, payable semiannually, the proceeds of said bonds to be applied only to the payment of the stock so subscribed in said water company.

Ordinance No. 7 was in regard to the electric light plant, and, so far as the parts thereof necessary to the decision of this case are concerned, was substantially the same as ordinance No. 5, except that the franchise was granted for ten years only, and the contract for light was for the same period. Twenty-three arc lights were to be furnished, for which the town was to pay an annual light rental of $570, payable in semiannual instalments, fixing the time of payment of each instalment. For each light in excess of twenty-three, the town was to pay an annual rental of $60, payable in semiannual instalments as the other light rentals were to be paid. The same person was named as superintendent as in ordinance No. 5. It was provided in each of said ordinances, No. 5 and No. 7, that the same should "be in force and take effect thirty days after its passage, provided the Waterloo Water Company should have filed its written acceptance with the town clerk within twenty days from such passage." No election was held to determine the question of the establishment of said water-works by said town. In fixing the amount of light and hydrant rentals to be paid by said town, no chance for competition was offered, but the same were determined by the said president of the Olds Construction Company and the board of trustees of said town by estimating the amount of money that would be realized by a levy of thirty-five cents on the $100 valuation for water purposes, and a levy of fifteen cents on each $100 valuation for light purposes, and for the money so realized the town was to be provided with fourteen hydrants and twenty-three street lights.

After the passage of said ordinance No. 6, the president of the board of trustees of said town, for said town, subscribed for 220 shares of the capital stock of said water company, as directed by said ordinance. None of the capital stock of said water company has been subscribed for except the three shares taken by said three incorporators, and the 220 shares taken by said town, nor is it the inten-

tion of said incorporators that any more stock shall be sub-
scribed for; and within twenty days after the passage of
said ordinances No. 5 and No. 7, on October 7, 1901,
said Waterloo Water Company filed in the office of the
clerk of said town a written acceptance thereof, and said
water company also accepted said specifications for the
water-works and electric light plant, and directed its presi-
dent and secretary to enter into a contract with the Olds
Construction Company for the performance of said work
at its bid of $21,795. Said water company also on October
1, 1902, ordered an issue of thirty-five bonds of $500 each,
amounting to $17,500, as authorized by said ordinances
No. 5 and No. 7, dated November 1, 1901, and falling due
in from one to fifteen years, with interest from date at
six per cent. per annum, payable semiannually, and the
execution of a mortgage on said water and light plant, fran-
chises, and contracts with said town to secure said bonds.
On February 1, 1902, said town secured a written option
on a lot to which to change the location of said water and
light plant from the town hall site, which contract of option
was assigned by said town to said water company on Feb-
ruary 14, 1902.

On February 11, 1902, the board of trustees of said town
passed two ordinances amending said ordinances No. 5 and
No. 7, by which the franchise for water-works and the
period for which the town was to rent hydrants were
changed from fifty years to twenty-five years, and the num-
ber of hydrants to be rented by the town was changed from
fourteen to fifteen, and it was provided that "said rentals
are to be paid only in case a sufficient and wholesome supply
of water is furnished by said Waterloo Water Company, its
successors and assigns, to said town and its citizens through
the hydrants herein referred to and through such other hy-
drants as may be placed from time to time." By said ordi-
nances amending said ordinances No. 5 and No. 7, the
amount for which the Waterloo Water Company was au-

thorized to issue its bonds and secure the same by mortgage was increased from $17,500 to $20,000. Section two of ordinance No. 5, which granted the water company the right to occupy the town-hall site to erect its plant, was so amended by said ordinances passed February 11, 1902, that such right was not granted. The provisions of said ordinances No. 5 and No. 7 in regard to the purchase of said plant by said town were amended so as to provide that "so much of the hydrant rentals theretofore paid by said town as may have been applied to the payment of the principal due on the bonds issued by the Waterloo Water Company shall be applied as a credit on the amount of the purchase price." It was provided in each of said amendatory ordinances passed on February 11, 1902, that the same should "be in force and go into effect thirty days after its passage, provided the Waterloo Water Company shall have filed its written acceptance thereof with the town clerk within ten days from its passage." The Waterloo Water Company filed its written acceptance of said ordinances with the town clerk of said town on March 11, 1902. On February 26, 1902, said water company notified the board of trustees of said town that, by reason of the change in the location of the water and light station, there would be an additional expense of $2,325. It will require the sum of $34,040 to pay the principal and interest of the bonds for $20,000, if issued by said water company as authorized by section seven of the amendatory ordinance of February 7, 1902, and paid as they fall due.

At the commencement of this action, on October 19, 1901, no written contract had been made between the Waterloo Water Company and the Olds Construction Company for the construction of the water and light plant; all proceedings under said ordinances No. 5 and No. 7 having been suspended upon the commencement of this suit. At the time of the trial of this cause, in March, 1902, the bonds of the town authorized by ordinance six had not been

issued, nor had the bonds of said water company authorized by said ordinances No. 5 and No. 7, and the amendments thereto, been issued by said water company. The purpose of the board of trustees of said town in granting the franchise to said Waterloo Water Company by said ordinances, and taking stock in said company, was to procure a supply of water and light for public and private use in said town.

It was found that "in adopting the several ordinances heretofore found, and in taking the other steps in relation to the establishment of the water and light system in said town, there was no fraud on the part of any of the parties to the action." The court stated as a conclusion of law "that the plaintiffs in this case are not entitled to an injunction and the relief asked." There being no finding that said ordinances No. 5 and No. 7, and the ordinances amending the same, each of which was to take effect thirty days ·after its passage, on certain conditions mentioned therein, were not published as required by the sixteenth subdivision of §4357 Burns 1901, Acts 1879, p. 201 (*Meyer* v. *Town of Boonville* (1903), 162 Ind. 165), we assume that publication was made thereof as required by said subdivision sixteen.

Article 13 of the Constitution of this State provides that "No political or municipal corporation in this State shall ever be indebted, in any manner or for any purpose, to an amount in the aggregate exceeding two *per centum* on the value of the taxable property within such corporation, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporation, shall be void." This article amending the Constitution was "agreed to" by the legislatures of 1877 and 1879, and was adopted by the people in March, 1881. It was suggested in *City of Valparaiso* v. *Gardner* (1884), 97 Ind. 1, 9, 10, 49 Am. Rep. 416, and in *City of Laporte*

v. *Gamewell, etc., Tel. Co.* (1896), 146 Ind. 466, 469, 35
L. R. A. 686, 58 Am. St. 359, that said article 13, *supra,*
was taken from the constitution of Iowa, but an examina-
tion of the constitutions of the states of Illinois, Wisconsin,
West Virginia, and Missouri shows that they also con-
tained, in legal effect, and almost in words, the same pro-
visions as said article 13, prior to 1881, when said amend-
ment of our Constitution was adopted by the people, and
also before 1877, when the same was first proposed and
agreed to by the legislature.    Under such circumstances,
we can not assume that said article 13 was taken from the
constitution of Iowa, in order to apply the rule that when
a constitution or statute, or part thereof, is taken from
another state it will be deemed to have the meaning given
to it by the courts of that state before it was adopted.    For
aught that appears, said article 13 may have been taken
from the constitution of any of the other states named.

It is contended by appellants:    (1) That the special
findings show that the transaction, as a whole, was a scheme
to evade said article 13 of the Constitution by means of
a dummy corporation.   *Earles* v. *Wells* (1896), 94 Wis.
285, 68 N. W. 964, 59 Am. St. 885; *Hebard* v. *Ashland
County* (1882), 55 Wis. 145, 12 N. W. 437; *Reynolds* v.
*City of Waterville* (1898), 92 Me. 292, 42 Alt. 553;
*Brown* v. *City of Corry* (1896), 175 Pa. St. 528, 34 Atl.
854; *Nelson* v. *City of Chicago* (1902), 196 Ill. 390, 63
N. E. 738; *City of Joliet* v. *Alexander* (1902), 194 Ill.
457, 62 N. E. 861; *Culbertson* v. *City of Fulton* (1888),
127 Ill. 30, 18 N. E. 781; *City of Springfield* v. *Edwards*
(1877), 84 Ill. 626; *Hall* v. *City of Cedar Rapids* (1901),
115 Iowa 199, 88 N. W. 448; *Windsor* v. *City of Des
Moines* (1900), 110 Iowa 175, 81 N. W. 476, 80 Am. St.
280; *Orvis* v. *Board, etc.* (1893), 88 Iowa 674, 56 N.
W. 294, 45 Am. St. 252; *Ironwood Water-Works Co.* v.
*City of Ironwood* (1894), 99 Mich. 454, 58 N. W. 371;
*Mayor, etc.,* v. *Gill* (1869), 31 Md. 375; *Newell* v. *People,*

*ex rel.* (1852), 7 N. Y. 9, 78, 86; *State, ex rel.*, v. *City of Helena* (1900), 24 Mont. 521, 63 Pac. 99, 81 Am. St. 453; *Browne* v. *City of Boston* (1901), 179 Mass. 321, 60 N. E. 934; *City of Ottumwa* v. *City Water Supply Co.* (1902), 119 Fed. 315, and note at pages 325-330, 56 C. C. A. 219, 59 L. R. A. 604; note to *Beard* v. *City of Hopkinsville* (1892), 44 Am. St., 233. (2) That there was no statute which authorized a town to take stock in a water and light plant, but that the statute on that subject had reference only to water-works companies regularly and duly incorporated for that purpose and no other.

Incorporated towns have authority to contract for water for public use, and for the lighting of the streets, alleys, and other public places in said towns with electric light. §4393a Burns 1901 (Acts 1897, p. 263); §4301 Burns 1901 (Acts 1883, p. 85); §§4443r-4443b1 Burns 1901 (Acts 1899, p. 216); *Town of Gosport* v. *Pritchard* (1900), 156 Ind. 400, and cases cited.

It is settled in this State that if a town contracts for water or light, or other things which pertain to its ordinary and necessary expenses, and agrees to pay for the same annually or monthly as furnished, such contract does not create an indebtedness for the aggregate sum of all such payments, within the meaning of said article 13 of the Constitution, because the debt for each year or month does not come into existence until it is earned. But if the indebtedness of the town already equals or exceeds the constitutional limit, and the current revenues are not sufficient to pay such indebtedness as it comes into existence, including the other expenses for which the town is liable, an indebtedness is created in violation of said article 13 of the Constitution. *City of South Bend* v. *Reynolds* (1900), 155 Ind. 70, 72, 73, 49 L. R. A. 795, and authorities cited; *Board, etc.,* v. *Gardner* (1900), 155 Ind. 165, 170, and cases cited; *Lake County* v. *Rollins* (1889), 130 U. S. 662, 9 Sup. Ct. 651, 32 L. Ed. 1060; *Doon Tp.* v. *Cum-*

*mins* (1892), 142 U. S. 366, 12 Sup. Ct. 220, 35 L. Ed. 1044; *Culbertson* v. *City of Fulton, supra; Earles* v. *Wells, supra.* The effect of the constitutional inhibition is to require a municipal corporation indebted to the limit fixed by the Constitution to carry on its corporate operations while so indebted upon a cash basis, and not upon credit, to any extent or for any purpose. *City of Laporte* v. *Gamewell, etc., Tel. Co.* (1896), 146 Ind. 466, 470, 471; *Earles* v. *Wells, supra.*

While the expense of water and light for public use in a town or city is an ordinary and necessary expense, the construction of a water-works or electric light plant by such town or city is not in any sense an ordinary and necessary expense, but an extraordinary one. There is a clear and plain distinction between a contract for water and light for public use and one for the construction of a water and light plant to furnish the same. The first is an ordinary and necessary expense, while the latter involves municipal ownership of the water and light plant, the means of furnishing said water and light, and is an extraordinary expense. *City of South Bend* v. *Reynolds, supra,* page 73; *Brown* v. *City of Corry, supra; Scott* v. *City of Davenport* (1872), 34 Iowa 208; *Grant* v. *City of Davenport* (1873), 36 Iowa 396, 401-403.

It has been correctly held that municipal corporations can not evade restrictions upon their power to become indebted by issuing their bonds, payable only out of a fund raised by a special tax authorized, levied, and collected for that purpose (provided the same are not for special benefits, as in the cases of *Board, etc.,* v. *Harrell* (1897), 147 Ind. 500, and cases cited, and *Quill* v. *City of Indianapolis* (1890), 124 Ind. 292, 7 L. R. A. 681), or payable only out of the rentals or income of a water or light plant or other property owned by such municipal corporation, or by buying property subject to liens, although they do not assume or agree, in terms, to pay said liens, or by providing

that such liens shall be paid only out of a special fund raised by taxation for that purpose, or only out of the income of such property. *City of Joliet* v. *Alexander, supra; Culbertson* v. *City of Fulton, supra; City of Ottumwa* v. *City Water Supply Co., supra;* and cases cited; *Windsor* v. *City of Des Moines, supra,* and cases cited; *Hall* v. *City of Cedar Rapids, supra,* and cases cited; *Reynolds* v. *City of Waterville, supra; Browne* v. *City of Boston, supra,* and cases cited; *Ironwood Water-Works Co.* v. *City of Ironwood, supra; Mayor, etc.,* v. *Gill, supra.*

If the plant shall be paid for under the arrangements shown in the special finding, it will cost the town, exclusive of interest, at least the contract price, $21,795, and the additional cost on account of the change of the water and light station, $2,325, making a total of $24,120. The town has not agreed to pay the bonded indebtedness of said company, but, by the ordinances set out in the special finding, it assumed to bind the town to pay $1,350 per annum for twenty-five years as water rentals for fifteen hydrants, being $90 a year for each hydrant, and $570 a year for ten years for light rentals, a total of $1,920 per annum during the continuance of the light rental. This amount must be paid each year to the trustee for the bondholders, to be applied in payment of the principal and interest of the bonds to be issued by the water company. Not only were the special taxes authorized by law for water and light purposes when said ordinances were passed and the town's power to levy the same pledged to the payment of said water and light rentals, but the general taxes of said town, and its power to levy the same, were also pledged for that purpose, with a proviso that no undertaking or obligation of the town contained in said ordinances should create any debt of the town within the meaning of the Constitution. If said ordinances created any indebtedness against the town in excess of the constitutional limit, the same was void to the extent of such excess without regard to said proviso.

It is settled law in this State that taxes general or special can not be anticipated or pledged by a municipality, if at all, beyond the limit it may become indebted, unless the tax has been actually levied and the warrant is drawn payable out of that fund, and be such in effect as to discharge the municipality from all liability. *City of Laporte* v. *Gamewell, etc., Tel. Co., supra,* and cases cited; *City of Joliet* v. *Alexander, supra.*

If the Olds Construction Company, or any other corporation in which the town was not a stockholder, had built said water and light plant ready for operation, and given a mortgage or trust deed thereon to secure an issue of bonds for $20,000, and then sold and conveyed the same to said town, subject to said mortgage or trust deed, in consideration of the bonds of said town for $5,500, and the town's providing by ordinance, as in this case, for the water and light rentals, and for the levying and collecting of taxes for water and light purposes, to pay the same, and the application thereof to the discharge of said mortgage lien of $20,000 on said water and light plant, and the interest thereon, even if it was expressly agreed that in no event should the town be liable for said bonds, or any part thereof, secured by said mortgage or trust deed, it is clear that said town of Waterloo would, under the authorities cited in this opinion, have become indebted by such an arrangement within the meaning of article 13 of the Constitution of this State. This is put upon the ground that the town would have to pay said bonds, or submit to have its property taken from it by foreclosure proceedings, and thus lose its property and all the money it had paid thereon. The town must pay the mortgage, or lose all the money paid, and the benefits to be derived from the purchase. "It is expected and understood that it will pay it and the interest on it." *Ironwood Water-Works Co.* v. *City of Ironwood, supra,* and cases cited; *Browne* v. *City of Boston, supra,* and cases cited. There is no substantial difference between such a

transaction and the one shown by this special finding. The special finding shows that the town could not contract for the construction of said water and light plant without becoming indebted beyond the limit fixed by said article 13 of the Constitution. The notice of letting the contract for the construction of the water and light plant was given by the town, and the proposal of the Olds Construction Company to build the same was accepted by the town before the articles of association of the Waterloo Water Company were filed in the offices as required by law, and before any of the stock was subscribed.

The capital stock of said Waterloo Water Company was $25,000, and only $5,575 thereof was ever to be subscribed, $5,500 of which, or 200 shares, was to be subscribed by the town, and $75, or three shares, by the officers and attorney of the Olds Construction Company, the successful bidder for the contract to construct the water and light plant. Under said arrangement the town was to own substantially all the stock to be subscribed, while the statute only by implication, if at all, authorized a town which had become a part stockholder by subscribing to the capital stock to sell its bonds to pay for the same. There were three stockholders besides the town, each owning one share of stock, but they were necessary in order that there might be three directors, under the statute which provides that such corporations shall be managed by a board of not less than three directors, who shall be stockholders. If the town had power to take stock in said corporation and become a stockholder therein, it practically owned said Waterloo Water Company, the corporation which obtained the franchise to construct and own the water and light plant, subject to the bonded debt of $20,000 authorized by said ordinances when said bonds were issued and sold. To obtain this right the town will be compelled to raise $5,500 by a sale of its bonds. It is owned and controlled by the town, and the operation and management of said water and light plant are

to be under the supervision of the board of trustees of said town, and its engineer or agent, appointed for that purpose. Under the arrangement shown by the special finding the town would be the real owner of the water and light plant when constructed. The Waterloo Water Company is merely a dummy corporation, owned by the town, but making contracts and incurring liabilities which it is admitted the town can not make or incur in its own name without violating the provisions of the Constitution restricting its power to become indebted. In other words, the town is attempting to do by a corporation practically owned by it what it has no power to do, and is prohibited from doing. Said arrangement is a palpable violation of said article 13 of the Constitution, for what a town can not do directly it can not do indirectly through a dummy corporation controlled and practically owned by it. The Constitution can not be evaded in this manner. In *State, ex rel., v. Forsythe* (1897), 147 Ind. 466, 472, 473, 33 L. R. A. 221, the court quoted with approval the following from Maxwell, Interp. Stat., 133, 134: "It is the duty of the judge to make such construction as shall suppress all evasions for the continuance of the mischief. To carry out effectually the object of a statute, it must be so construed as to defeat all attempts to do or avoid in an indirect or circuitous manner that which it has prohibited or enjoined. *In fraudem legis facit, qui, salvis verbis legis, sententiam ejus circumvenit;* and a statute is understood as extending to all such circumventions, and rendering them unavailing. *Quando aliquid prohibetur, prohibetur et omne per quod devenitur ad illud.* When the acts of the parties are adopted for the purpose of effecting a thing which is prohibited, and the thing prohibited is in consequence effected, the parties have done that which they have purposely caused, though they may have done it indirectly. When the thing done is substantially that which was prohibited, it falls within the act, simply because, according to the true construction of the statute, it

is the thing thereby prohibited.    Whenever courts see such
attempts at concealment 'they brush away the cob-web
varnish,' and show the transaction in its true light.    They
see things as ordinary men do, and see through them.
Whatever might be the form or color of the transaction,
the law looks to the substance of it.    In all such cases it is,
in truth, rather the particular transaction than the statute
which is the subject of construction; and if it is found to be
in substance within the statute, it is not suffered to escape
from the operation of the law by means of the disguise
under which its real character is masked." See, also,
*Webb* v. *John Hancock, etc., Ins. Co.* (1904), 162 Ind. 616,
and cases cited; *Government, etc., Inst.* v. *Denny* (1900),
154 Ind. 261, 266, and authorities cited.

It is found that there was no fraud on the part of any of
the parties to the action in adopting said ordinances, or in
taking the other steps in relation to the establishment of
the water and light system in said town.    It is not ma-
terial whether or not there was any fraud on the part of any
one, nor does the necessity for said water and light plant
make any difference, if by said arrangement the town be-
came indebted within the meaning of our Constitution.
The language of article 13 of the Constitution is plain and
simple, and its meaning is unmistakable.    The incurring
of indebtedness beyond the amount limited is absolutely
and unqualifiedly prohibited, no matter what the necessity,
pretext, or circumstances may be, except those provided for
in said article, or the form which the indebtedness is made
to assume.    It binds the courts, curbs the power of the
legislature, the officials, and the people themselves, and was
intended to protect the taxpayers by confining the indebted-
ness of a municipal corporation within a prescribed limit.

We will now consider appellants' second proposition—
that said town was not authorized to become a part stock-
holder in said corporation.    It is settled law that incor-
porated towns and cities have only the following powers:

(1) Those granted in express words; (2) those necessarily implied or incident to the powers expressly granted; and (3) those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. And doubtful claims of power or any doubt or ambiguity in the terms used by the legislature are resolved against the corporation. *Muncie Nat. Gas Co.* v. *City of Muncie* (1903), 160 Ind. 97, 100, 60 L. R. A. 822, and authorities cited; *Pittsburgh, etc., R. Co.* v. *Town of Crown Point* (1896), 146 Ind. 421, 422, 35 L. R. A. 684, and authorities cited; *Bogue* v. *Bennett* (1901), 156 Ind. 478, 480, 481, 83 Am. St. 212; *Walker* v. *Towle* (1901), 156 Ind. 639, 641, 53 L. R. A. 749; *Scott* v. *City of Laporte* (1904), 162 Ind. 34; Black, Interp. of Laws, 317. It is evident that a town or city has no power in this jurisdiction to become a part stockholder in a water-works or other corporation, or to borrow money by issuing bonds or otherwise to pay for such stock, unless express authority to do so is given by some statute. *City of Aurora* v. *West* (1864), 22 Ind. 88, 85 Am. Dec. 413; *Mayor, etc.,* v. *Wetumpka Wharf Co.* (1879), 63 Ala. 611; *Pitzman* v. *Village of Freeburg* (1879), 92 Ill. 111; Black, Interp. of Laws, 318; Dillon, Mun. Corp. (4th ed.), §161; 20 Am. and Eng. Ency. Law (2d ed.), 1144. Such statutes are strictly construed in limitation of such powers. 20 Am. and Eng. Ency. Law (2d ed.), 1098 (3), 1099 (c); *Demaree* v. *Johnson* (1898), 150 Ind. 419, 423; *Garrigus* v. *Board, etc.* (1872), 39 Ind. 66, 77; *Couchman* v. *Prather* (1904), 162 Ind. 250; *Miles* v. *Ray* (1884), 100 Ind. 166, 169, and cases cited; *Scott* v. *City of Laporte, supra; McManus* v. *Duluth, etc., R. Co.* (1892), 51 Minn. 30; *Pennsylvania R. Co.* v. *Canal Commissioners* (1852), 21 Pa. St. 9, 22; *Winchester, etc., Road Co.* v. *Clarke County Court* (1860), 60 Ky. 140; *Harding* v. *Rockford, etc., R. Co.* (1872), 65 Ill. 90; *Pitzman* v. *Village of Freeburg, supra.* This power is claimed for towns

under §3614 Burns 1901, Acts 1895, p. 140, the same being an amendment of the act of 1893 (Acts 1893, p. 184). · If said act of 1895 empowers a town to become a part stockholder in a water-works company authorized by it to construct water-works for furnishing water to said town, it is by implication, because said act does not in express terms authorize a town to become a part stockholder in such corporation or association. Can this be done? *Pitzman* v. *Village of Freeburg, supra,* and authorities above cited. A city of the general class, however, was authorized by subdivision twenty-six of §3541 Burns 1901, enacted in 1867, to become a part stockholder in a corporation or association authorized to construct water-works in said city. In 1893 the legislature passed an act authorizing cities taking stock in water-works corporations under subdivision twenty-six of §3541, *supra,* to issue and sell bonds to pay for such stock. Acts 1893, p. 184. The title of said act of 1893 was as follows: "An act to authorize the common council of any city to issue, negotiate and sell the bonds of such city, to raise money to pay for stock subscribed to any incorporated water-works company or association, in which said city may become a part stockholder, and declaring an emergency." Without amending the title of the act of 1893, the act of 1895 purports to amend said act of 1893 by extending the provisions thereof to "the boards of trustees of incorporated towns." It is clear that the title of said act of 1893 was not sufficient to embrace the provision in regard to the boards of trustees of incorporated towns contained in said amendatory act of 1895. *State* v. *Bowers* (1860), 14 Ind. 195; *Mewherter* v. *Price* (1858), 11 Ind. 199; *State, ex rel.,* v. *Commercial Ins. Co.* (1902), 158 Ind. 680, 684-687; *Dixon* v. *Poe* (1902), 159 Ind. 492, 495, 60 L. R. A. 308, 95 Am. St. 309. The title of the act of 1893 is set forth in full in the title of said act of 1895, and is followed by the words "so as to extend the provisions thereof to incor-

porated towns, and declaring an emergency." Can the subject of an amendatory act be enlarged in this manner to embrace a matter not covered by the title of the act amended? *Walsh* v. *State, ex rel.* (1895), 142 Ind. 357, 361, 362, 33 L. R. A. 392; *State, ex rel.,* v. *Commercial Ins. Co., supra; State* v. *Bowers, supra; Dyker, etc., Improvement Co.* v. *Cook* (1896), 38 N. Y. Supp. 222. The view we take of this case renders unnecessary the determination of this question, as well as the question whether or not by implication towns can be authorized to subscribe to the capital stock of water-works companies or associations, and become part stockholders in such companies or associations.

Conceding, without deciding, that the town of Waterloo was authorized by said act of 1895 (§3614 Burns 1901) to take stock in the kind of corporation mentioned therein, the same as cities, did it have the power to become a stockholder in the Waterloo Water Company? That company, as shown by its articles of association, was incorporated to own and operate a water and light plant and furnish water and light for public and private use in said town. It is insisted by appellant that there is no law in this State authorizing "the organization of a corporation for the purpose of furnishing both water and light to a town for public and private use"—citing *Williams* v. *Citizens Enterprise Co.* (1900), 25 Ind. App. 351. We need not and do not decide this question, for the reason that even if a corporation may be organized for both of said purposes, §3614, *supra,* does not purport to authorize towns to issue, negotiate, and sell their bonds to pay for stock in such a corporation. If said section empowers a town to take stock in a corporation and issue, negotiate, and sell its bonds to pay therefor, it is clear, under the rule of strict construction already stated, that the corporation must be a water-works corporation— one which has been granted a franchise to construct a water-works plant, and furnish water to said town, one organized for that purpose and no other. The Waterloo Water Com-

pany having been organized for the purpose of constructing and operating both a water and light plant to furnish water and light to said town, it follows that the town of Waterloo had no power to take stock therein, or to issue, negotiate, and sell its bonds to pay for the same. It follows that the court erred in its conclusion of law.

Other questions are argued in the briefs of counsel, but the conclusion we have reached renders their determination unnecessary.

Judgment reversed, with instructions to restate the conclusions of law in conformity with this opinion, and to render final judgment against appellees, the defendants in the court below, accordingly.